**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Russell Kevin VOSS, Defendant–**
**Appellee.**

**No. 90–5140.**

United States Court of Appeals,
Tenth Circuit.

Feb. 13, 1992.

David O'Meilia, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the briefs), Tulsa, Okl., for plaintiff-appellant.

Jill M. Wichlens, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colo., for defendant-appellee.

Before SEYMOUR and EBEL, Circuit Judges, and MATSCH,* District Judge.

SEYMOUR, Circuit Judge.

Russell Kevin Voss was sentenced to sixty five months imprisonment for conspiring to possess listed chemicals with intent to manufacture methamphetamine in violation of 21 U.S.C. § 846 (1988). His sentence was imposed pursuant to the United States Sentencing Commission's Guidelines Manual (Nov.1989) (hereinafter "Guidelines"). The government challenges the propriety of the sentence. Mr. Voss argues in response that the district court applied the wrong guideline to determine his sentence. Because Congress intended to punish listed chemical offenders less severely than persons found guilty of the manufacture of illegal drugs, we agree with Mr. Voss. We therefore vacate his sentence and remand for resentencing in accordance with this opinion.

## I.

Because the Government's appeal is limited to Mr. Voss's sentencing, we only briefly set forth the facts leading to his conviction. On June 30, 1989, Mr. Voss and Harmon Heath were arrested in Tulsa, Oklahoma, shortly after purchasing 110 pounds of ephedrine, 20 gallons of hydriodic acid, and approximately 20 pounds of red phosphorous from Mid–Town Scientific Chemical Company. In the cab of the truck used to transport the chemicals, the arresting DEA agents found one quarter-ounce of white powder that field-tested positive for methamphetamine. At the time of the arrest, Mr. Heath told the agents that Mr. Voss had a methamphetamine laboratory at his home in Riverside, California. A later search of the California premises described by Heath disclosed a dismantled laboratory and approximately 1.5 pounds of methamphetamine. The presentence report, prepared after Mr. Voss's conviction, estimated that the chemicals seized in Oklahoma could potentially produce at least 80 pounds of methamphetamine.

Mr. Voss was subsequently indicted for three violations of federal law. Count I charged him with conspiring to possess the listed chemicals ephedrine and hydriodic acid with the intent to manufacture methamphetamine; Count II charged him with possession of the two listed chemicals with intent to manufacture methamphetamine; and Count III charged him with possessing methamphetamine with the intent to distribute. On March 21, 1990, after a jury trial, Mr. Voss was acquitted of Counts II and III, but convicted of Count I.

Mr. Voss was convicted of conspiring to possess listed chemicals in violation of 21 U.S.C. § 846. Section 846 provides that conspirators are to be punished with reference to the object of the conspiracy, and the Guidelines determine the base offense level accordingly. Guidelines, § 2X1.1. Mr. Voss's objective was to violate 21 U.S.C. § 841(d), which provides in relevant part: "Any person who knowingly or intentionally—II (1) possesses a listed chemical with intent to manufacture a controlled substance ... shall be fined in accordance with Title 18, or imprisoned not more than 10 years, or both." 21 U.S.C. § 841(d). The Guidelines and section 846 thus require the district court to determine the base offense level as if Mr. Voss had violated section 841(d).

The district court sentenced Mr. Voss in accordance with sentencing guideline 2D1.1.[1] Rec., vol. III, at 5–6. Under that

---

* The Honorable Richard P. Matsch, District Judge, United States District Court for the District of Colorado, sitting by designation.

1. This guideline section directs the sentencing court to apply the base offense level for the statute violated or the quantity of drugs involved, whichever is greater. Guidelines, § 2D1.1(a). Drug quantity is translated to base offense level by application of the Drug Quantity Table. Guidelines, § 2D1.1(c).

guideline, the court determined that the relevant quantity of methamphetamine for sentencing purposes was the 1.5 pounds seized at the California laboratory. The district court concluded that this quantity warranted an offense level of 26,[2] which when considered with his criminal history level of I, resulted in a range of 63–78 months. *Id.* The district court imposed a sentence of 65 months.

The government contends on appeal that the district court erred in relying only on the drugs seized in California, without considering the quantities producible from the chemicals seized in Oklahoma. In the government's view, Mr. Voss should be sentenced as though he possessed 81.5 pounds, or approximately 36.96 kilograms, of methamphetamine. Under the Drug Quantity Table, this amount would result in a base offense level of 38. Applying the sentencing table, Mr. Voss's sentencing range would then be from 235 to 293 months. Because his sentence could not exceed the statutory maximum under section 5G1.1(a), however, Mr. Voss would be sentenced to ten years in prison.

## II.

■ Like the district court, the government's brief assumes that violations of section 841(d) should be sentenced under Guidelines section 2D1.1. We hold, to the contrary, that section 2D1.1 does not properly apply to violations of that statute. While we acknowledge that the applicability of the guideline was not questioned in the district court, this failure does not license us to disregard the lower court's plain legal error. *See United States v. Smith,* 919 F.2d 123, 124 (10th Cir.1990) (application of the wrong guideline in sentencing constitutes plain error).

The statutory index appended to the sentencing guidelines simply cross-references section 841(d) and Guidelines section 2D1.1, without commentary. Guidelines, Appendix A at A.19 (Nov.1989). In this case, the probation officer who prepared the presentence report relied on this reference to recommend the sentence. Rec., vol. II, at 4. Similarly, the government's brief relies on this single reference. Reply Brief of Appellant at 3. The reference in the statutory index does not, however, compel application of the referenced guideline. "Rather than establishing immutably the exclusive list of available guidelines for given offenses, the Index *merely points the court* in the right direction." *United States v. Cambra,* 933 F.2d 752, 755 (9th Cir.1991) (emphasis added). The Guidelines instruct sentencing courts to: "Determine the applicable offense guideline from Chapter Two. *See* § 1B1.2 (Applicable Guidelines). The Statutory Index (Appendix A) provides a listing to *assist* in this determination." Guidelines, § 1B1.1(a) (emphasis added). "If, in an atypical case, the guideline section indicated for the statute of conviction *is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct* charged in the count of which the defendant was convicted." Guidelines, Appendix A, Introduction to Statutory Index at A.1 (emphasis added).

■ If we conclude that the suggested guideline is inappropriate to the underlying conduct, we must then search for the section most applicable to possession of listed chemicals with intent to manufacture methamphetamine. Our review of the application of a particular guideline section is de novo. *See United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir.1990); *United States v. Kirk,* 894 F.2d 1162, 1163 (10th Cir.1990) ("legal conclusions with respect to the guidelines ... subject to de novo review").

### A.

Various factors compel the conclusion that Appendix A's suggestion should not be followed in this case. First, we note that

---

**2.** The district court apparently miscalculated the offense level. Actually, 1.5 pounds, or approximately .68 kilograms, of methamphetamine converts to 3.4 kilograms of cocaine for purposes of determining a defendant's base offense level. Guidelines, § 2D1.1(c). This amount yields a base offense level of 28. *Id.* at (8).

the appendix was written before the current version of section 841(d) was enacted[3] as part of the Anti–Drug Abuse Amendments Act of 1988, on November 18, 1988. Pub.L. No. 100–690, § 6055, 102 Stat. 4312, 4318 (Subtitle A—Chemical Diversion and Trafficking Act of 1988).[4] The government, like the district court, therefore relies on an appendix drafted prior to the adoption of the statute that Mr. Voss was convicted of conspiring to violate.

Congress's distinction between the particular conduct involved in section 841(d)(1) violations, possession of certain listed chemicals, and section 841(a) violations, possession of controlled drugs themselves, suggests that application of section 2D1.1 is inappropriate. Unlike the specific drug offense penalties set forth in section 841(b), subsection (d) allows no more than ten years imprisonment.[5] Adoption of the government's suggested approach in this case would insure that almost all violators of section 841(d) would be sentenced to the ten year maximum imprisonment, *see United States v. Perrone*, 936 F.2d 1403, 1419 (2d Cir.1991), thus turning a statutory maximum into a mandatory sentence. The Sentencing Commission suggests that such interpretations are undesirable because they preclude district courts from considering aggravating or mitigating factors. *See* United States Sentencing Commission, *Mandatory Minimum Penalties in the Federal Criminal Justice System*, 27–30 (August 1991). Application of section 2D1.1 to section 841(d)(1) violations would

effectively nullify the various sections of the Guidelines geared to a particular defendant's offense-specific conduct. *See, e.g.,* Guidelines, §§ 3A1.1, 3B1.1, 3B1.2, 3B1.3, 3E1.1.[6] Absent stronger support than a reference in a statutory appendix written without specific knowledge of the statute at issue, we decline to undermine the sentencing regime created by the Sentencing Commission. Moreover, we are persuaded that a contrary interpretation would ignore "Congress' explicit determination, as expressed in § 841(d), that the possession of processing chemicals warrants less severe punishment than do other more advanced efforts to traffic in narcotics." *Perrone,* 936 F.2d at 1415.

Application of section 2D1.1 equates possession of listed chemicals with intent to manufacture and manufacture. The dissent notes that "ultimately, of course, the objective was to manufacture illegal methamphetamine." Dissent at 1013. Because of his objective, the dissent would treat Mr. Voss in precisely the same manner as if he had manufactured methamphetamine. Congress would not. As is discussed above, Congress has made an explicit determination that section 841(d) violators are to be treated less severely than those who are found guilty of manufacturing methamphetamine.

The dissent argues that the "statutory cap" prevents the application of section 2D1.1 from subverting this intention. Dissent at 1014 n. 2. At some level, this is

---

**3.** Formerly section 841(d) was titled "[p]iperidine offenses and penalty." 21 U.S.C. § 841(d) (Supp. IV 1986) (amended 1988). While piperidine is a precursor chemical, it is only one among the many listed in the current statute. The old version of the statute provided for a statutory maximum sentence of five years imprisonment. *Id.*

**4.** Appendix A was recently amended to refer section 841(d)(1) violations to a new guideline, 2D1.11, which specifically addresses listed chemical offenses. *See* Guidelines, Appendix A at 394 (Nov.1991); *infra* at 1011.

**5.** In cases involving actual manufacture or possession of 100 grams or more of methamphetamine in violation of section 841(a), for example, section 841(b) requires a sentence "which

may not be less than 10 years." 21 U.S.C. § 841(b)(1)(A)(viii) (1988). In cases involving listed chemicals with intent to manufacture, however, no matter the amount of methamphetamine that could be produced, section 841(d) provides that the defendant "shall be fined in accordance with title 18 or imprisoned not more than 10 years, or both." 21 U.S.C. § 841(d).

**6.** These sections require the sentencing court to consider the vulnerability of the victim, the role played by the defendant in the offense (either aggravating or mitigating), and the degree to which the defendant has accepted responsibility for her acts. Guidelines, §§ 3A1.1, 3B1.1, 3B1.2, 3E1.1. Depending on these factors, a defendant's offense level may be either increased or decreased.

correct, but only in the most literal sense; the Guidelines may not authorize a sentence in excess of the statutory maximum. Application of section 2D1.1 makes the statutory maximum the rule rather than the exception, is contrary to congressional intention, and prevents incorporation of individual offense characteristics in the guideline calculus. In our judgment, such an approach is unsupportable.

Our conclusion is further buttressed by the most recent amendments to the Sentencing Guidelines. As of November 1, 1991, violators of section 841(d) are sentenced under Guidelines section 2D1.11. This new guideline establishes a base offense schedule for possession of listed chemicals. Guidelines, § 2D1.11. The Statutory Index has been amended to reflect the change. *See* Guidelines, Appendix A at 394 (Nov.1991). A majority of the Courts of Appeals, including this circuit, will apply a clarifying amendment to the Commentary to the Guidelines in reviewing sentencing which occurred prior to the effective date of the change. *See Early v. United States,* — U.S. —, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991) (White, J. dissenting from denial of certiorari) (citing cases); *United States v. Smith,* 951 F.2d 1164, 1168 (10th Cir.1991); *United States v. Urbanek,* 930 F.2d 1512, 1515 (10th Cir.1991).[7]

Because the amendment here is substantive rather than merely clarifying, we do not apply it. Nevertheless, it does support our conviction that section 2D1.1 does not apply to section 841(d) violations. In *United States v. Nissen,* 928 F.2d 690, 695 (5th Cir.1991), the court considered a subsequent change to the text of the Guidelines themselves in interpreting a particular guideline section. In *Nissen,* as in this case, the amendment supported the court's reading of the Guidelines. Here, the addition of section 2D1.11 serves only to underscore the inapplicability of section 2D1.1 to

listed chemicals offenses. The Commission's explanation of its change comports with our reading of the amendment. "This amendment makes Chapter Two, Part D more comprehensive by providing *additional guidelines to address violations involving listed chemicals,* ... that are used in the manufacture of controlled substances." Guidelines, Appendix C, amendment 371 (Nov.1991) (emphasis added). Had the previous versions of the Guidelines addressed violations involving listed chemicals, additional guidelines would not have been necessary.

The new guideline tracks Congress's statutory approach to listed chemical offenses. In Mr. Voss's case, the 110 pounds, or approximately 49.90 kilograms, of ephedrine seized at Tulsa, would result in a base offense level of 28. Guidelines, § 2D1.11(d)(1). The amount of ephedrine controls because it is "the single listed essential chemical resulting in the greatest offense level." Guidelines, § 2D1.11(b). With Mr. Voss's criminal history score, a sentence of 78–97 months is indicated. In accord with the purposes of the Guidelines, the new guideline leaves room for consideration of aggravating and mitigating factors connected to a particular offense. Under the dissent's approach, ten years is required. Dissent at 1014 n. 2. The contrast between the dissent's approach and that adopted by the Sentencing Commission makes plain that the previous versions of the Guidelines did not address this conduct.

### B.

We realize that other courts have applied section 2D1.1 to section 841(d) offenses. In *United States v. Kingston,* 922 F.2d 1234, 1237–39 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2054, 114 L.Ed.2d 460 (1991), the court justified its application of the guideline by emphasizing the federal effort to block drug distribution efforts at

---

7. The dissent responds to this argument by relying on *United States v. Saucedo,* 950 F.2d 1508, 1515 (10th Cir.1991), for the proposition that "[t]he Sentencing Commission's post hoc clarification of its intent does not invalidate our pre-amendment interpretation of the guideline." *Id.* Our conclusion in this case does not invalidate a

"pre-amendment interpretation of the guideline." This is the first time this circuit has considered the applicability of section 2D1.1 to section 841(d) offenses. As a result, the concerns facing the court in *Saucedo* are not implicated here.

the earliest possible moment. *Id.* at 1238. No doubt this reasoning supports enactment of section 841(d) itself, as it does the prosecution of Mr. Voss in this case. The reasoning does not, however, address the manifest intention of Congress to punish section 841(d) violators *less* severely than violators of the other drug offense sections of 841. As is discussed above, congressional intention with respect to both section 841 and the Guidelines themselves persuades us that section 2D1.1 should not have been employed to sentence Mr. Voss.

*United States v. Cook,* 938 F.2d 149, 152 (9th Cir.1991), reaches the same result as *Kingston* for a different reason. In *Cook,* the court did not rely on the statutory index, but rather on the title of section 2D1.1: "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." *Id.* The *Cook* court felt that the Guidelines thus created "an identity of crimes and punishments," between drug offenses and listed chemical offenses, even though such an interpretation meant that "the Guidelines have created a mandatory maximum which in fact exceeds what the statute provides." [8] *Id.* The *Cook* court was not persuaded by the apparent congressional intent with respect to violations of section 841(d). We think that "[p]ossession with [i]ntent" in the title to the Guideline refers to possession of illegal drugs, not listed chemicals.[9] The absence of listed chemicals from the table in section 2D1.1 supports this understanding. Again, for

us, congressional intent compels a different reading than that adopted by *Cook.*

Most of the cases relied on by the government in its appeal consider the proper method of calculating drug quantity under section 2D1.1. *See United States v. Andersen,* 940 F.2d 593, 597–98 (10th Cir. 1991)[10]; *United States v. Macklin,* 927 F.2d 1272, 1281–82 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 146, 116 L.Ed.2d 112 (1991); *United States v. Havens,* 910 F.2d 703, 704–06 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991). Each of these cases permits district courts to consider the amount of drugs that the defendant could produce in order to determine the defendant's base offense level under section 2D1.1. The government urges that the district court erred by refusing to consider the amount of drugs Mr. Voss could have produced from the chemicals seized in Tulsa. While we agree with the dissent that the district court's refusal to consider the producible quantity was improper under section 2D1.1, the district court's application of section 2D1.1 itself was erroneous.

### C.

◼ Once a court determines that section 2D1.1 does not apply, it must search for the most analogous guideline. Guidelines, § 2X5.1 (court to use most analogous guideline when no guideline has been expressly promulgated). Given the strictures of section 2X1.1 (conspiracy sentence re-

---

**8.** Given the Guidelines's deference to statutory maximums, *see* Guidelines, § 5G1.1(a), such a position seems untenable.

**9.** The dissent at 1014 suggests that this interpretation "makes no sense." In our judgment, the dissent's approach elevates the guideline's title over its substance, and ignores Congress's *refusal* to create "an identity of crimes and punishments." *See* dissent at 1014 (quoting *Cook,* 938 F.2d at 152). Moreover, section 841(d) only criminalizes listed chemical offenses when they are accompanied by an intent to manufacture a controlled substance or by some level of knowledge that they will be used to manufacture a controlled substance or otherwise violate federal law. 21 U.S.C. § 841(d). As a result, the rest of the title of section 2D1.1 bears little relation to listed chemical offenses. The interpretation

adopted in the text accompanying this note more precisely reflects the scope of the guideline at issue, and makes a great deal of sense.

**10.** *Andersen* decided that sentencing courts were free to sentence on the basis of the amount of drugs producible from seized chemicals in *manufacture* cases. 940 F.2d at 598. The court did not consider its applicability in cases of *possession* of listed chemicals with intent to produce. While Mr. Andersen was convicted under section 841(d), he was also convicted under section 841(a)(1), manufacturing methamphetamine, and various other manufacture-related sections. *Id.* at 595. In Mr. Andersen's case, producible quantity was calculated as a result of his conviction for manufacture of methamphetamine, not merely for possession of listed chemicals. *Id.* at 598.

quires use of guideline for object offense), and the failure of the guideline most readily applicable to drug crimes to cover the described offense, we have concluded that there is no sufficiently analogous guideline. "If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control." Guidelines, § 2X5.1. That section instructs: "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)."[11] 18 U.S.C. § 3553(b) (1988). We therefore must remand to the district court for sentencing in accordance with section 3553(b).

We VACATE Mr. Voss's sentence and REMAND for resentencing in accordance with this opinion.

EBEL, Circuit Judge, dissenting:

In my opinion, the district court appropriately applied sentencing guideline 2D1.1 to the violation of 21 U.S.C. § 841(d). However, I believe the district court erred in calculating Mr. Voss' sentence for conspiring to possess listed chemicals with the intent to manufacture methamphetamine without considering the quantity of methamphetamine producible from the chemicals seized in Oklahoma.

An examination of the sentencing guidelines reveals that the district court appropriately sentenced Mr. Voss in accordance with section 2D1.1. The statutory index appended to the Guidelines, which determines "the guideline section or sections ordinarily applicable to the statute of conviction," clearly cross-references 21 U.S.C. § 841(d) and Guidelines section 2D1.1. U.S.S.G.App. A at A.1, A.19 (Nov.1989).[1] The majority correctly points out that this index is only a guide designed to assist the sentencing court in its determination. Opinion at 1009 (citing Guideline 1B1.1(a)).

However, the sentencing court should disregard the guideline listed in the index only *"in an atypical case"* where the guideline "is inappropriate because of the particular conduct involved." U.S.S.G.App. A at A.1 (emphasis added). The plain language of the sentencing guidelines convinces me that 2D1.1 is indeed appropriate for the conduct at issue. The conduct here is far from atypical; to the contrary, it is an all too common situation.

Mr. Voss was convicted of conspiring to possess listed chemicals with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 846. Both section 846 and sentencing guideline 2D1.4 provide that conspirators are to be punished as if the object of the conspiracy had been completed. Under section 846, "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Under sentencing guideline 2D1.4, "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level *shall* be the same as if the object of the conspiracy or attempt had been completed." (emphasis added). Here, Mr. Voss' objective was to violate section 841(d). Thus, Mr. Voss is to be treated as if he possessed listed chemicals with the intent to manufacture methamphetamine. Ultimately, of course, the objective was to manufacture illegal methamphetamine.

Section 2D1.1 clearly encompasses this offense. Its heading indicates that it governs "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." The majority stated that " '[p]ossession with [i]ntent' in the title to the

---

**11.** Subsection (a)(2) requires the sentencing court to consider:
"the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of

the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

**1.** All citations to the sentencing guidelines refer to the 1989 version unless otherwise indicated.

Guideline refers to possession of illegal drugs, not listed chemicals." Opinion at 1012. I do not infer such a limitation. The parenthetical in the heading modifies all of the activities that precede it, including "manufacturing." Thus, "[p]ossession with [i]ntent" must also refer to possession of *chemicals* with intent to manufacture. To interpret the phrase as does the majority would limit its applicability regarding manufacturing to possession of illegal drugs with the intent to manufacture illegal drugs. That simply makes no sense.

Other circuits have determined that it is appropriate to apply section 2D1.1 in cases involving section 841(d). The Sixth Circuit appears to have been the first to do so in *United States v. Kingston,* 922 F.2d 1234, 1237–38 (6th Cir.1990). In *Kingston,* the appellant was convicted of possession of a listed chemical with the intent to manufacture and distribute methamphetamine. The court noted that "Congress intended to punish severely the possession of listed chemicals with the intent to manufacture controlled substances" and determined that "the Guidelines dictate [that § 2D1.1] be followed in sentencing violators of § 841(d)." *Id.* at 1236.[2]

The Ninth Circuit followed suit in *United States v. Cook,* 938 F.2d 149 (9th Cir.1991). In *Cook,* the appellant pled guilty to possession of ephedrine with the intent to manufacture methamphetamine in violation of section 841(d)(1). The court determined that section 2D1.1 was applicable to possession of chemicals with the intent to manufacture methamphetamine in light of the

language of its heading, reasoning as follows:

> When the court sentences for a felony for which no guideline has been promulgated, the court "is required to determine if there is a sufficiently analogous offense guideline, and, if so, to apply the guideline that is most analogous." U.S.S.G. § 2X5.1, Comment (backg'd.). . . . [Here], there was no need to invoke the principle of analogy. Guidelines, § 2D1.1 has the heading: "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." In other words, the Guidelines include possession with intent to commit manufacturing under unlawful manufacture. There is not a mere analogy but an identity of crimes and punishments. As a result of treating possession with intent to manufacture in the same way as actually manufacturing, the Guidelines have created a mandatory maximum which in fact exceeds what the statute provides. In those circumstances Guideline § 5G1.1(a) comes into play and reduces the sentence to the statutory maximum.

*Id.* at 152 (citations omitted). Thus, the court found that section 2D1.1 expressly governs possession of chemicals with the intent to manufacture a controlled substance.

Even if section 2D1.1 did not expressly govern the situation at hand, it is certainly "the most analogous offense guideline" under section 2X5.1. *See* U.S.S.G. § 2X5.1 (if

---

**2.** The majority criticizes *Kingston* for failing to reconcile its application of section 2D1.1 with "the manifest intention of Congress to punish section 841(d) violators *less* severely than violators of the other drug offense sections of 841." Opinion at 1012. Applying section 2D1.1 to section 841(d) violations is not inconsistent with this intention, however. Section 841(d)'s ten-year cap on imprisonment will often result in less severe treatment for section 841(d) violations than for violations of completed drug transactions under section 841(a); without the cap, section 841(d) violators with an offense level of 42, for example, would be sentenced to thirty years to life. Furthermore, violators of section 841(d) are not automatically sentenced to ten years; they receive this maximum sen-

tence only if quantities demand it. The facts of this case present a good example of the more lenient sentence accorded to a defendant for conspiracy to possess listed chemicals with intent to manufacture methamphetamine than the sentence that would apply had the defendant been successful in converting those chemicals into methamphetamine. In the latter situation, the guideline range would have been from 235 to 293 months with no limiting statutory cap. However, because this defendant was convicted of conspiracy, the statutory cap of 120 months limits his sentence to less than one-half the severity of what he would have received if the object of the conspiracy had been fully consummated.

no guideline has been expressly promulgated for an offense, apply "the most analogous offense guideline"; if no analogous guideline exists, apply 18 U.S.C. § 3553(b)). When a defendant is convicted of conspiracy to possess precursor chemicals (and consequently sentenced as if he possessed those chemicals), it is analogous to look at the completed product given the defendant's ultimate goal and Congress' intention to punish such possession severely.

In fact, Mr. Voss himself acknowledged that a sentencing court may appropriately look to the end product when dealing with precursor chemicals when he accepted the fact that his sentence for conspiracy to possess listed chemicals with the intent to manufacture methamphetamine was based upon the uncharged 1.5 pounds of the completed drug that was seized from his laboratory.

For the foregoing reasons, the district court appropriately applied section 2D1.1 to the underlying conduct in this case. I remain unconvinced by Mr. Voss' argument that application of section 2D1.1 is inappropriate because the appendix cross-referencing section 841(d) to section 2D1.1 was written before the current version of 841(d) was enacted. The fact that the reference in the appendix remained in effect after the current version of section 841(d) was enacted seems to me to be more indicative of the Sentencing Commission's intent.

Nor am I persuaded by Mr. Voss' argument that the recent amendments to the Guidelines, which establish a base offense schedule for possession of listed chemicals, see U.S.S.G. § 2D1.11(d) (Nov.1991), illustrate that the previous versions of the Guidelines did not address this conduct.

"The Sentencing Commissions' post hoc clarification of its intent does not invalidate our pre-amendment interpretation of the guideline." *United States v. Saucedo,* 950 F.2d 1508, 1515 (10th Cir.1991). Furthermore, the existence of the amendment is immaterial for conduct predating the amendment because section 2X5.1 was designed precisely for the situation in which the conduct at issue was not expressly covered. If the amendment is an acknowledgment that the previous version of the guidelines did not expressly address possession of precursor chemicals, we are then referred by section 2X5.1 to "the most analogous offense guideline." As discussed *supra,* section 2D1.1 is the most analogous guideline and would thus still be applicable.[3]

For the above reasons, the district court did not err by applying section 2D1.1.[4] I agree with the government's argument, however, that the district court did err in not considering the quantity of methamphetamine producible from the chemicals seized in Oklahoma, as required by the law within our Circuit and others.

Application Note 2 to section 2D1.4 states that "[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge *shall* approximate the quantity of the controlled substance." U.S.S.G. § 2D1.4, comment. (n.2) (emphasis added).[5] *See also United States v. Havens,* 910 F.2d 703, 704 (10th Cir.1990) ("In cases where the amount of drugs seized does not reflect the scale of the offense, the commentary to the Guidelines *requires* the trial judge to approximate the quantity of the controlled substance.") (emphasis added). "In making this determination, the judge may con-

---

3. Additionally, although section 2D1.11 is a more precise method of dealing with the situation of precursor chemicals, there is nothing in that amendment suggesting that the Commission believed that precursor chemicals were not covered in a more general way by reference to section 2D1.1 prior to the amendment.

4. I must conclude, with even greater conviction, that the district court did not commit "plain legal error" as the majority alleges. Opinion at 1009. Because Mr. Voss never challenged the

applicability of section 2D1.1 in the district court, the majority has to find not only error, but clear error, before it can reverse.

5. This mandatory language contradicts the sentencing court's statement that in its view the Sentencing Commission wanted to give the sentencing court discretion in evaluating the amount of drugs to be considered by the Court in applying the guidelines and in determining the scope of the guidelines. Tr. at 5.

sider ... the size or capability of any laboratory involved." U.S.S.G. § 2D1.4, comment. (n.2).

DEA agents found only one-quarter ounce of methamphetamine at the time of Mr. Voss' arrest and 1.5 pounds of methamphetamine during a later search of his laboratory. However, a California Department of Justice chemist estimated that the chemicals seized at the time of Mr. Voss' arrest had the potential to produce a minimum of eighty pounds of methamphetamine. In light of this potential, the amount of drugs seized clearly does not reflect the scale of Mr. Voss' offense. Thus, the mandatory language of section 2D1.4 requires the sentencing court to approximate the quantity of methamphetamine producible from the chemicals possessed.

In *Kingston,* the Sixth Circuit recognized the dilemma posed in cases of this nature: "The crux of the problem is this: violators of § 841(d) have not sold or made any controlled substances, but § 2D1.1, which the Guidelines dictate be followed in sentencing violators of § 841(d), fixes sentences based solely by the amount of controlled substance involved in the offense." *Id.* at 1236 (citation omitted). The court reasoned that "basing the sentence on the amount of the controlled substance that would have been involved in the crime had the scheme advanced[ ] is the fairest way to reconcile § 841(d) and U.S.S.G. § 2D1.1." *Id.* at 1237. This method is "more in line with the spirit of the laws" because Congress intended to punish severely possession of listed chemicals with intent to manufacture controlled substances. *Id.* at 1236–37.

As the majority acknowledges, subsequent cases permit district courts to consider the amount of drugs that the defendant could have produced with the chemicals in his possession in order to determine the defendant's base offense level under section 2D1.1. *See* Opinion at 1011. In *Ha-*

*vens,* this Circuit held that "[i]n cases where the amount of drugs seized does not reflect the scale of the offense, the commentary to the Guidelines requires the trial judge to approximate the quantity of the controlled substance." 910 F.2d at 704. When only small amounts of the completed drug were found with the large amounts of precursor chemicals "the trial court, upon proper testimony, may estimate the ultimate quantity of produceable drugs." *Id.* at 704–05. In *United States v. Macklin,* 927 F.2d 1272 (2d Cir.1991), the Second Circuit similarly found that a sentence based upon an estimate of the total producible amount was proper when precursor chemicals were seized prior to any effort to manufacture controlled substances. *Id.* at 1281; *see also United States v. Smallwood,* 920 F.2d 1231, 1237 (5th Cir.1991) (sentence based upon estimate of production capabilities proper when defendant was sentenced only for possession with intent to distribute methamphetamine).

The holding of this Circuit in *Havens,* 910 F.2d at 704, is clear. When the amount of finished product seized does not reflect the scale of the offense, the plain language of Application Note 2 to section 2D1.4 requires the district court to consider the amount of drugs that would have been produced had the defendant's scheme come to its fruition.

According to the California Department of Justice chemist, the chemicals seized from Mr. Voss had the potential to produce at least eighty pounds of methamphetamine. Under the Drug Quantity Table, this amount results in a base offense level of 38, for which the sentencing range is 235 to 293 months. Because Mr. Voss' sentence cannot exceed the statutory maximum,[6] however, he should be sentenced to ten years in prison.

For the foregoing reasons, I believe that section 2D1.1 is applicable to violations of 21 U.S.C. § 841(d). However, I would vacate the sentence and remand for resen-

---

**6.** Section 841(d) provides in relevant part: "Any person who knowingly or intentionally—(1) possesses a listed chemical with intent to manufacture a controlled substance ... shall be fined

in accordance with Title 18, *or imprisoned not more than 10 years,* or both." (emphasis added).

tencing based upon the quantity of methamphetamine producible from the chemicals seized in Oklahoma. Therefore, I must respectfully dissent.