**UNITED STATES of America**

**v.**

**Dennis CONN and Patrick William Swint.**

**Crim. Nos. 1:CR–92–286–01, 1:CR–92–286–02.**

United States District Court, M.D. Pennsylvania.

Jan. 30, 1995.

Court believes was necessary to make the appro-          priate application.

Dennis Patrick Conn, Morton, PA, Thomas Moribondo, Philadelphia, PA, Gerald A. Stein, Philadelphia, PA, for Dennis Patrick Conn.

Patrick William Swint, SCI–CH, Camp Hill, PA, Thomas Moribondo, Philadelphia, PA, Allan J. Sagot, Philadelphia, PA, Marilyn C. Zilli, Fetterhoff and Zilli, Harrisburg, PA, for Patrick William Swint.

William A. Behe, United States Attorney's Office, Harrisburg, PA, Michael J. Kane, Assistant U.S. Attorney, Harrisburg, PA, for the U.S.

### MEMORANDUM

RAMBO, Chief Judge.

Defendants Conn and Swint have filed motions for judgment of acquittal or, in the alternative, a new trial pursuant to Federal Rules of Criminal Procedure 29(c) and 33. The issues have been briefed by both parties and the motion is ripe for disposition.

*Background*

Defendants Conn and Swint were indicted on one count of conspiracy to manufacture

methamphetamine and P2P, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On September 29, 1994, both were found guilty by a jury of the single charge in the indictment.

The overwhelming majority of the evidence introduced at trial concerned a single sale of phenylacetic acid, a precursor chemical for the production of methamphetamine. The evidence included recordings of telephone conversations between Conn and an undercover government informant, and between Swint and the informant (who was Defendant Swint's brother), in which the parties arranged the details of the phenylacetic acid sale. The transfer from the informant to Patrick Swint of ten 500 gram bottles of the chemical took place in a furtive fashion, and was captured on police surveillance video. The delivery of the phenylacetic acid from Swint to Conn was observed by undercover government agents, who testified as to their observations at trial. Evidence was introduced suggesting that Conn paid Swint $5000 for the chemical, an exorbitant price as compared with the approximately $200 cost of the same quantity when purchased at a chemical supply store, where recording requirements apply. Furthermore, the taped telephone conversations revealed some communication between Defendant Conn and the informant contemplating another sale of phenylacetic acid at some point in the future. The government introduced no evidence attributing other chemicals or laboratory equipment necessary in the production of methamphetamine to either defendant.

Defendants now attack their conviction on three independent grounds. First, they contend that their convictions were contrary to law because they were improperly charged under 21 U.S.C. §§ 841(a)(1) and 846. Second, Defendants maintain that their convictions were based on insufficient evidence. Finally, they argue that the court committed reversible error when it admitted into evidence certain tape recorded conversations in which Defendants participated. The court will address each of these issues in turn.

### Discussion

### I. Propriety Of Charging Defendants Under 21 U.S.C. §§ 841(a) and 846

Defendants contend that their conviction is contrary to law because the government im-properly charged them under 21 U.S.C. §§ 841(a) and 846. Section 841(a)(1) provides:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance.

21 U.S.C. § 841(a)(1). Section 846 further states:

> Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846. Defendants argue that the prosecutor did not have the authority to proceed against them under §§ 841(a) and 846 because their crime is subsumed by § 841(d). Section 841(d) proscribes the conduct of:

> (d) Any person who knowingly or intentionally—
>
> (1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this title; [or]
>
> (2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this title. . . .

21 U.S.C. § 841(d). Phenylacetic acid is a listed chemical within the meaning of § 841(d).

Defendants emphasize that Congress has assigned substantially different sentencing schemes to these separately codified crimes, with a lesser punishment generally attaching to violations of § 841(d). Given the amount of methamphetamine which the government attributes to Defendants' conviction (based upon extrapolation from the quantity of precursor chemical involved), they may face a minimum ten year sentence for their convic-

tions under §§ 841(a)(1) and 846.[1] *See* 21 U.S.C. § 841(b)(1)(A). If convicted under § 841(d), Defendants would be subject to a sentence of 57 to 71 months under the Guidelines.[2]

Defendants maintain that by enacting distinct statutory provisions, Congress evinced an intent to punish those who possess listed chemicals with intent to manufacture a controlled substance, or reasonable cause to believe that such manufacture will occur, less severely than those who manufacture the end product. In light of § 846, this position suggests that Congress similarly intended to punish conspiracy to violate § 841(d) less severely than conspiracy to violate § 841(a). Defendants characterize the government's evidence against them as showing no more than possession of a listed chemical, and insist that no evidence was introduced indicating production, or intended production, of methamphetamine. Thus, they assert that their convictions under §§ 841(a)(1) and 846 are in conflict with congressional intent and contrary to law.

■ The government responds that the statute under which an individual is charged, absent a discriminatory motive, is a matter of prosecutorial discretion. The court agrees. It is well settled that there is no requirement that a prosecutor seeking an indictment proceed under the more lenient of two statutes which prohibit the same conduct. In *United States v. Batchelder*, 442 U.S. 114, 123–24, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979), the Supreme Court stated:

> This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants.... Whether to prosecute and what charge to file or bring before a grand jury are deci-

sions that generally rest in the prosecutor's discretion.

(citations omitted). *See United States v. Hubbard*, 22 F.3d 1410, 1419–20 (7th Cir. 1994) (applying *Batchelder* to conduct violating both § 841(a) and § 841(d)). Accordingly, the court rejects Defendants' contention that the prosecutor was required as a matter of law to proceed against them under § 841(d).

## II. *The Sufficiency Of The Evidence*

■ Having chosen to charge Defendants under §§ 841(a)(1) and 846, the government must meet the burden of proof required to convict under those provisions. The Second Circuit has persuasively argued that this burden must be understood in relation to § 841(d). In *United States v. Perrone*, 936 F.2d 1403 (2nd Cir.1991), the defendant had been convicted of conspiracy to manufacture narcotics under §§ 841(a)(1) and 846, as well as possession of listed chemicals with an intent to manufacture cocaine, or reason to believe that such manufacture would occur, under § 841(d). Under the §§ 841(a) and 846 conviction, as in the present case, the defendant faced a ten year minimum. He was subject to a ten year maximum pursuant to the § 841(d) conviction. Furthermore, the evidence in *Perrone*, as here, principally concerned possession of listed chemicals with reason to anticipate that they would be used in the manufacture of a controlled substance, as well as some indicia of intent to engage in such manufacture. The *Perrone* court set out the following summary of the evidence against the defendant, as presented by the trial judge at sentencing:

> Here, Mr. Perrone was not prosecuted as being part of a large drug conspiracy. He was prosecuted for a rather narrow offense which gave rise to two criminal charges.

---

1. The court believes that, even if Defendants' conviction is sustained, the minimum ten year sentence will only obtain if the government demonstrates by a preponderance of the evidence that Defendants should be sentenced pursuant to the D-methamphetamine provisions in the United States Sentencing Guidelines ("Guidelines"). (*See* this court's memorandum dated January 13, 1995.)

2. This sentence is based upon 5000 grams of phenylacetic acid (offense level 24), and a category II criminal history, which is recommended by the United States Probation Department. The court notes that this 57 to 71 month sentence is the same as that which Defendants would face if sentenced under the L-methamphetamine provisions of the Guidelines for their conviction under §§ 841(a)(1) and 846. (*See* this court's memorandum dated January 13, 1995.)

One was a conspiracy to manufacture cocaine, and the other was the possession of materials to manufacture drugs.

And his acts in support of those criminal purposes were to pick up and drive 20 gallons of acetone to West 135th Street, where a search also revealed scales and bags and ammunition, stun guns, et cetera. And he had on his person a recipe for making cocaine.

*Perrone,* 936 F.2d at 1415 n. 7. In light of this evidence, the *Perrone* court stated:

Here ... the only narcotics offense involved was that charged under § 841(d) and § 846, namely, possession of chemicals with the intent to manufacture cocaine or knowledge that cocaine would be manufactured, and conspiracy to commit that offense. There was no other evidence of a conspiracy to manufacture cocaine involving Perrone than his possession of the chemicals under circumstances for which a jury could reasonably infer that he knew or should have known that they would be used to manufacture cocaine. These are precisely the elements set forth by Congress in § 841(d) for which it has determined that a ten year maximum should apply.

Essentially, the government argues that the facts supporting a conviction for a conspiracy to violate § 841(d) will always be a sufficient basis to infer the existence of a conspiracy to violate § 841(a). We cannot accept that Congress would have intended § 841(a) and § 841(d) to be construed in a manner that a conviction of a conspiracy to violate § 841(d) with its ten year maximum would in every case automatically warrant a concomitant conviction of a conspiracy to violate § 841(a) with its ten year minimum.

. . . .

There is every indication that it did not. § 846 provides that conspiracy to violate § 841(d) is subject to the same penalty as the substantive offense. It would violate this provision if a conspiracy to violate § 841(d) subjected a defendant to greater penalties than the substantive violation.

. . . .

We do not agree with the government's argument that Perrone's conviction of an "additional narcotics offense" transformed the ten year maximum into a minimum, for that begs the crucial question: whether there was additional evidence to support a conviction of the additional offense, in this case conspiracy to manufacture narcotics, beyond the minimum necessary to sustain a conviction under § 841(d). As far as this defendant was concerned, there was not.

Therefore, where, as here, a defendant engages in no criminal conduct beyond that which is punishable by a maximum of ten years under § 841(d) and § 846, we hold that he or she cannot be convicted, *based only on that identical conduct,* of a violation of § 841(a). To permit a different result would be to vitiate Congress' explicit determination, as expressed in § 841(d), that the possession of processing chemicals warrants less severe punishment than do other more advanced efforts to traffic in narcotics. By not tying the penalty structure of possessing chemicals to particular amounts of drugs which might be produced with those chemicals, Congress implicitly recognized that it would be unfair to hold a defendant who merely possesses certain chemicals responsible for all of the drugs which could theoretically have been produced using those chemicals.

*Perrone,* 936 F.2d at 1415–16 (emphasis in original).

█ This court believes that the logic of *Perrone* is inescapable.[3] Thus, the court

---

**3.** The court notes that the Third Circuit recently considered whether it is permissible to sentence an individual convicted under § 841(d) pursuant to § 2D1.1 of the Guidelines, which sets forth the sentences for violations of § 841(a). In *United States v. Bogusz,* 43 F.3d 82, 92–93 (3rd Cir. 1994), the court noted that § 2D1.11, which sets out the sentences that apply to § 841(d) violations, cross references § 2D1.1 "*only* when the 'offense involve[s] unlawfully manufacturing or attempting to manufacture a controlled sub-

stance....' U.S.S.G. § 2D1.11(c)(1)." *Id.* at 92 n. 18 (emphasis added). The *Bogusz* court had to go further and determine whether, prior to the 1991 amendment to § 2D1.11, a person convicted under § 841(d) could be sentenced pursuant to § 2D1.1. In concluding in the affirmative, the court rejected the treatment of the issue in *United States v. Voss,* 956 F.2d 1007 (10th Cir.1992). *Bogusz,* 43 F.3d at 92, 93. The *Voss* court answered the same question negatively on the

must determine whether in the instant action the government presented more than the minimum necessary evidence to sustain a conviction under § 841(d), and, if so, whether it was sufficient to uphold the § 841(a) conspiracy conviction. When making this determination, the court "must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3rd Cir.1993).

The government characterizes the evidence presented against Defendant Conn as follows. A recorded conversation between Conn and the informant showed that Conn intended to buy phenylacetic acid, which he was later observed receiving from Swint. Conn appears to have paid a highly inflated price for the chemical. Furthermore, Conn stated the following to the informant: (1) that he would "piss [the ten bottles of phenylacetic acid] ... out in one day;" (2) that he would have preferred to purchase twenty bottles of the chemical; (3) that he wanted to purchase a much larger quantity of phenylacetic acid in a future transaction; (4) that he would provide the informant's supplier of phenylacetic acid with methamphetamine as partial payment in the hoped for future transaction; and (5) in response to the informant's statement that after the next transaction "you'll have all the fuckin' weight [or methamphetamine] you can *make*," Conn replied: "Good. Great. Marvelous." (United States' brief in opposition to Defendants' motion for judgment of acquittal or new trial, hereinafter "United States' brief," at 20.)

■■■ This evidence suggests that Defendant Conn knowingly possessed phenylacetic acid with reasonable cause to believe that it would be used to manufacture methamphetamine, and possibly with the intent to manufacture methamphetamine himself.[4] Thus, the evidence shows precisely what is necessary for a conviction under § 841(d). However, it does not exceed that showing as is required for a conviction under § 841(a).[5]

The government summarizes its evidence against Defendant Swint as follows: (1) a conversation between Mr. Swint and the informant arranging the time and place for delivery of the phenylacetic acid from the informant to Swint; (2) Swint's furtive behavior when receiving the chemicals; (3) Swint's payment of $5,000 for chemicals costing approximately $200 when legitimately purchased; and (4) Swint's delivery of the

---

ground that to permit such sentencing would frustrate congressional intent to enact offense specific punishment. *Id.* at 1010. The logic of *Bogusz*'s rejection of *Voss* on the issue of sentencing is not in conflict with *Perrone*'s analysis of the relative burden's of proof under § 841(a) and § 841(d). This proposition is born out by the *Bogusz* court's citation to *Perrone* as concurring with its disagreement with *Voss* on the sentencing issue. *Bogusz*, at 93 n. 19.

Furthermore, the court's extensive research turned up no case, other than *Perrone*, in which prosecutors brought charges under §§ 841(a) and 846 on grounds of possession of listed chemicals without some further evidentiary nexus to the production process.

4. When the portions of the trial transcript to which the government refers are read in context, it is not clear whether Conn intended to produce methamphetamine himself. For example, when the informant asked whether Conn could provide the informant's source with P2P (an intermediate precursor between phenylacetic acid and methamphetamine), Conn replied that he could not. The informant then asked if Conn could provide methamphetamine instead, and he responded affirmatively. If Conn intended to manufacture the methamphetamine himself, it is not clear why he claimed to have access to the final product but not an intermediate precursor. Furthermore, the fact that the only explicit reference to actually making methamphetamine came from a government informant requires that the court accord it less weight than if Conn had said it himself. Notably missing from the government's case is the ability to attribute to Mr. Conn any other precursor chemicals or equipment necessary for the production of methamphetamine, or any connection to a methamphetamine laboratory. The court need not resolve Conn's precise relation to the anticipated manufacturing process because its holding will not turn on that issue.

5. It is arguable, though not clear, that discussing the possibility of future purchases of phenylacetic acid, and partial payment for such purchases in methamphetamine, could constitute conspiracy to manufacture under §§ 841(a) and 846. However, there is no true agreement or meeting of the minds, and thus no conspiracy, when an individual conspires to violate a law with only one other person, and that person is acting as a government informant. *United States v. Schmidt*, 947 F.2d 362, 367 (9th Cir.1991); *United States v. Giry*, 818 F.2d 120, 126 (1st Cir.1987).

phenylacetic acid to Defendant Conn. (United States' brief at 20–21.)

The court believes that this evidence is sufficient for a jury to conclude that Swint knowingly possessed phenylacetic acid with reason to anticipate that it would be used to manufacture methamphetamine. However, the government introduced no evidence of contact between Defendants Conn and Swint outside the context of this single transaction. No evidence was presented suggesting that Defendant Swint could be imputed with knowledge of the intended use of the precursor any more specific than that it would be used in the manufacture of methamphetamine. In sum, there is nothing on the record indicating that Defendant Swint's role in the transaction constituted more than a one-time delivery of a precursor chemical with knowledge of its intended use. Thus, while the government's evidence against Defendant Swint satisfies the elements of § 841(d), it fails to go further, which is necessary to meet the burden of proof for conviction under §§ 841(a) and 846.

The government failed to introduce evidence against either Conn or Swint which exceeded the minimum necessary to sustain a conviction under § 841(d). The court thus concludes that even when the evidence is viewed in the light most favorable to the government, it did not present substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt on the §§ 841(a)(1) and 846 charge. Accordingly, Defendants' convictions under 21 U.S.C. §§ 841(a)(1) and 846 will be vacated.

### III. Admission Of Recordings In Which Defendants Discussed the Phenylacetic Acid Transaction

▮ Having concluded that Defendants' convictions will be vacated, the court need not reach their claim that the court committed reversible error by admitting recordings of telephone conversations in which each discussed arrangements for the methamphetamine sale. The court notes, nevertheless, that this claim is without merit. Defendants cite *Smith v. United States,* 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), in support of the proposition that statements of a defendant cannot be used against him without substantial independent evidence of the corpus of the crime charged. However, the evidentiary rule to which they refer applies only to statements made by a defendant *after* they have been charged with a crime. *Opper v. United States,* 348 U.S. 84, 90, 75 S.Ct. 158, 163, 99 L.Ed. 101 (1954); *see also Smith,* 348 U.S. at 155, 75 S.Ct. at 198–99. The rule does not pertain to statements which themselves constitute a crime in progress. Moreover, even where statements by a defendant are reached by the rule of *Smith* and *Opper* (which were companion cases), they are admissible provided that the government introduces "substantial independent evidence which would tend to establish the trustworthiness of the statement." *Opper,* 348 U.S. at 93, 75 S.Ct. at 164. In the instant action, the government easily carried that burden.