RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0107p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                            *Plaintiff-Appellee,*

          *v.*

JOSEPH SWAFFORD,
                            *Defendant-Appellant.*

No. 08-6462

_____

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 04-00138-001—Curtis L. Collier, Chief District Judge.

Argued: April 20, 2011

Decided and Filed: April 28, 2011

Before: SUTTON and KETHLEDGE, Circuit Judges; HOOD, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Paul D. Cross, CLEMENTS & CROSS, Monteagle, Tennessee, for Appellant. Debra A. Breneman, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Paul D. Cross, CLEMENTS & CROSS, Monteagle, Tennessee, for Appellant. Perry H. Piper, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. A jury convicted Joseph Swafford of selling over 3,000 gallons of iodine "knowing, or having reasonable cause to believe," that it would be used to manufacture methamphetamine. 21 U.S.C. § 841(c)(2). Reasoning that the crime

_____

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

implicated the cross reference in U.S.S.G. § 2D1.11(c)(1) because it "involved unlawfully manufacturing a controlled substance," the district court imposed a 360-month sentence.  We affirm.

I.

This is Swafford's second trip to the Sixth Circuit.  As explained the first time, 512 F.3d 833 (2008), a federal grand jury indicted Swafford, the owner of a store called Broadway Home and Garden, on forty counts stemming from a methamphetamine-production scheme. *Id.* at 838.  At trial, twenty "methamphetamine cooks" testified that they regularly bought iodine from Swafford over the course of several years. *Id.* Other testimony established that the amount of iodine Swafford sold "clearly exceeded that necessary for a legal purpose" and that Swafford was "aware that the iodine was destined for methamphetamine production." *Id.* A jury convicted Swafford on all counts.

The district court calculated a guidelines range of 360 months to life, and sentenced him to 360 months.  On appeal, we vacated the two conspiracy convictions (on variance grounds) and the nineteen convictions for possessing iodine (on Double Jeopardy grounds) and ordered the district court to resentence Swafford based on the nineteen convictions for iodine distribution.

In resentencing Swafford, the district court looked to U.S.S.G. § 2D1.11, which punishes "Unlawfully Distributing, Importing, Exporting or Possessing a Listed Chemical."  Because Swafford's conduct "involved unlawfully manufacturing a controlled substance," the court applied the relevant cross reference, giving Swafford a base offense level of 38.  After a two-level enhancement for obstruction of justice, Swafford's new guidelines range came to 292–365 months, and the court (again) imposed a 360-month sentence.

II.

The key question is whether the district court correctly invoked the cross reference in § 2D1.11(c), which applies "[i]f the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully."   To determine whether Swafford's conduct "involved" the manufacture of methamphetamine, we look to two other provisions.  According to the application notes for § 2D1.11, the cross reference applies when

> the defendant, or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct), completed the actions sufficient to constitute the offense of unlawfully manufacturing a controlled substance or attempting to manufacture a controlled substance unlawfully.

U.S.S.G. § 2D1.11 cmt. n.2.  Swafford did not "complete[] the actions sufficient to constitute" the illegal manufacture of methamphetamine, but several of his customers did.  That takes us to § 1B1.3, which holds Swafford accountable for

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and . . . in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . .

*Id.* § 1B1.3(a)(1).

Consistent with these requirements, Swafford had a "criminal plan, scheme, endeavor, or enterprise" with several of the methamphetamine cooks, it was "reasonably foreseeable" that those customers would manufacture methamphetamine and Swafford's sale of iodine was "in furtherance of the jointly undertaken criminal activity."  The district court's findings support this conclusion.  At the sentencing hearing, it said: "based upon the evidence . . . heard in this case, and, again, giving the government the benefit of credibility with respect to the witnesses, the Court makes a finding that [Swafford] was involved in a conspiracy or separate conspiracies with many, many

people who testified as witnesses in this case." R.255 at 50. In its written sentencing order, the court reiterated the point by referring to our first opinion in this case, where we noted that "the evidence proved at this trial demonstrated the existence of multiple conspiracies between [Swafford] and many of the Broadway customers who testified," R.251 at 10 n.3; *Swafford*, 512 F.3d at 841–42. In the same order, the court found that Swafford "suppl[ied] iodine to people when he *knew* it was intended for methamphetamine use," R.251 at 10 (emphasis added), a finding that satisfies the "reasonably foreseeable" requirement, U.S.S.G. § 1B1.3(a)(1).

The evidence supports these findings, and indeed we said as much in our first opinion. Swafford purchased large amounts of iodine from wholesalers, well beyond any amount that reasonably could be sold for legitimate purposes. He in turn sold the same volume of iodine to known methamphetamine cooks. And he accepted only cash for the iodine purchases, though he accepted credit cards or checks for other purchases.

The pattern of sales to methamphetamine cooks cements this conclusion. They came to Swafford on a regular basis, up to three times a week, to buy the iodine. One methamphetamine cook, Brian Storey, testified that the two had the kind of ongoing "relationship" that "[w]hen he sees me, he knows what I'm there for." Tr. at 899. Storey wanted to stay out of Tennessee due to pending gun charges, so once or twice a month Swafford would meet Storey at a convenience store in neighboring Alabama, where people "very seldom ever see[] any police," and Storey would hand Swafford up to $3,500 in cash for a box of 10–18 pounds of iodine out of the back of Swafford's truck. *Id.* at 906–07, 912. When a police officer was in the store just as one methamphetamine cook entered, Swafford met the customer at the door, directed him to read literature about dog shampoo, then sold him iodine after the officer left. On another occasion, when a methamphetamine cook pointed out that much of the other stock in Swafford's store was out of date, Swafford responded, "Well, that's not where we're making our money." *Id.* at 670.

On this record, the district court's findings were not clearly erroneous. Swafford's conduct met all of the elements of § 1B1.3, warranting application of the cross reference.

Swafford protests that the cross reference punishes him for manufacturing methamphetamine even though the jury did not convict him of that charge. True enough. But the application of the guidelines is "not always the same as the principles and limits of criminal liability." U.S.S.G. § 1B1.3 cmt. n.1. Sentencing courts instead must "focus . . . on the specific acts and omissions for which the defendant is to be held accountable . . . , rather than on whether the defendant is criminally liable for an offense." *Id.* That indeed is the nature of cross references and all relevant-conduct guidelines, which in this instance apply to any "jointly undertaken criminal activity . . . whether or not charged as a conspiracy." *Id.* § 1B1.3(a)(1)(B). Even had the jury *acquitted* Swafford of conspiracy to manufacture methamphetamine (which it did not), the district court still would have had discretion to rely on that conduct if the evidence supported it. *See United States v. White*, 551 F.3d 381, 383–85 (6th Cir. 2008) (en banc).

So long as Swafford's sentence falls below the statutory maximum, the "district court does not abridge the defendant's right to a jury trial by looking to other facts . . . when selecting a sentence within that statutory range." *Id.* at 385. The jury convicted Swafford of nineteen counts of violating § 841(c), each carrying a 10-year maximum. That results in a statutory maximum of 190 years, well above Swafford's 360-month sentence. *See United States v. Jeross*, 521 F.3d 562, 579 (6th Cir. 2008) (stacking sentences does not violate the Sixth Amendment).

Swafford persists that Congress, by distinguishing the distribution of chemicals to make methamphetamine from the manufacture of methamphetamine, meant to punish the two crimes differently. Congress would not have wanted the cross reference applied to people who merely sold large quantities of ingredients, Swafford adds, without also requiring that they possess other equipment or chemicals used to produce methamphetamine. *See* Swafford Br. at 17–23. Yet the language of the § 2D1.11 cross reference leaves no room for this position. It says that "involvement" with the

manufacture of methamphetamine triggers the cross reference, and nothing suggests sales of large amounts of iodine (along with other incriminating facts) may not amount to "involvement."

Swafford claims that this interpretation renders § 2D1.11 superfluous because every defendant sentenced under § 2D1.11 while "knowing, or having reasonable cause to believe" the chemicals would be used to create methamphetamine, would necessarily be subject to the cross reference and thus be sentenced under § 2D1.1.  Yet § 841(c) violations are not the only crimes sentenced under § 2D1.11, which applies to at least eight other crimes.  *See* U.S.S.G. app. A at 558–59; *see, e.g.*, 21 U.S.C. § 960(d)(2). Even as to § 841(c) alone, the guideline serves a function.  The cross reference applies only when the defendant is "involved" in the manufacture of methamphetamine. Defendants may have "reasonable cause," 21 U.S.C. § 841(c), to know where the iodine is headed without being "involved" in the manufacturing effort, without that is being part of "a criminal plan, scheme, endeavor, or enterprise," U.S.S.G. § 1B1.3.

*United States v. Voss*, 956 F.2d 1007 (10th Cir. 1992), adds nothing to the inquiry.  At the time of *Voss*, the statutory index to the guidelines had not been updated to account for a recently enacted listed-chemical offense, and § 2D1.11 had not yet become part of the guidelines.  The Tenth Circuit held that district courts could not sentence defendants convicted of listed-chemical offenses under § 2D1.1, but should use the most analogous guideline, which in that case was no guideline at all.  *See id.* at 1009–12 (remanding for sentencing in accordance with 18 U.S.C. § 3553).  The court reasoned that Congress wanted to treat possession of listed chemicals differently from possession of actual drugs, relying in part on the fact that the recently enacted § 2D1.11 would have applied instead (had it been applicable).  *See id.*  But *Voss* conflicts with decisions from at least four other circuits, including most pertinently one of our own.  *See United States v. Kingston*, 922 F.2d 1234, 1237–39 (6th Cir. 1990); *see also United States v. Leed*, 981 F.2d 202, 207 (5th Cir. 1993); *United States v. Hyde*, 977 F.2d 1436, 1438–41 (11th Cir. 1992); *United States v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991).  No less importantly, *Voss* itself acknowledged that § 2D1.11 eliminated this

problem for future cases, *see Voss*, 956 F.2d at 1010 n.4, 1011, which is why *Voss* no longer governs this inquiry even in the Tenth Circuit, *see United States v. Wagner*, 994 F.2d 1467, 1471–72 (10th Cir. 1993).

The rule of lenity offers no aid to Swafford. It applies "only if there is grievous ambiguity or uncertainty in the [guidelines]," *United States v. Smith*, 549 F.3d 355, 362 n.2 (6th Cir. 2008), and no such uncertainty exists about the role of the cross reference in cases like this one.

Nor does it make a difference that the district court did not apply the cross reference at the first sentencing hearing. Our first decision in the case prompted a general remand, "leav[ing] it to the district court in the first instance to determine upon remand . . . what the appropriate Guidelines range is," *Swafford*, 512 F.3d at 839 n.1, and placing no limits on how the district court should calculate the new guidelines range. Nor was there any reason to invoke the cross reference at the first sentencing hearing. The then-extant conspiracy conviction required the application of § 2D1.1, precluding application of the cross reference and the double counting that might have come with it.

Swafford also challenges the reasonableness of his sentence, claiming it violates the requirement that courts "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That is an unconventional ground for challenging a *within-guidelines* sentence. The point of the guidelines is to decrease sentencing disparities, an objective *furthered* by a within-guidelines sentence, as opposed to a sentence that varies above or below the advisory guidelines range. The very thing Swafford presumably wants—a below-guidelines sentence—is more likely to create disparities than eliminate them. There is nothing wrong, to be sure, with a below-guidelines sentence. It is just that a request for one should not turn on § 3553(a)(6). *See United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008).

III.

For these reasons, we affirm.