**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roy Patrick COOK,
Defendant–Appellant.**

**No. 90–10358.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1991.

Decided July 8, 1991.

---

Anthony Capozzi, Fresno, Cal., for defendant-appellant.

Carl Faller, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before CHAMBERS, BEEZER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Roy Patrick Cook appeals his conviction and sentence for possession of ephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). We affirm his conviction but remand for re-sentencing.

## PROCEEDINGS

On June 27, 1989 Cook was indicted on two counts, one charging him with the attempted manufacturing of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and the other charging him with possession of ephedrine with the intent to manufacture methamphetamine in violation of 21 U.S.C. § 841(d)(1). He moved to sup-

press the evidence, and the district court denied the motion.

If Cook had been convicted on the first count, he would have been sentenced under Sentencing Guidelines § 2X1.1, which provides that the base offense level is to be that "for the object offense." United States Sentencing Commission, *Guidelines Manual* (U.S.S.G.), § 2X1.1 (1990). In this case the level would be 34. As the crime was an attempt, there would be a decrease of 3 to 31. § 2X1.1(b)(1). Cook's criminal history category was I. His resulting sentence would have been 120 to 135 months. Cook entered into a plea agreement whereby the government dropped count one, and he pleaded guilty to count two, reserving the right to appeal the district court's denial of his motion to suppress.

The probation officer prepared a presentence report, in which she noted that the crime of which Cook had been convicted was not listed in the Guidelines. Accordingly, she turned to the Guidelines, § 2X5.1, which provides: "If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control."

The probation officer concluded that the most analogous section was determined in the Drug Quantity Table 2D1.1(c). Applying this table she found that Cook "could have produced" 44 pounds of methamphetamine from the ephedrine he possessed. Accordingly, she applied the Drug Quantity Table (5), which speaks in terms of "at least 3 KG but less than 10 KG of Methamphetamine." Applying the table in this fashion she found the total offense level was 34. From this she subtracted 2 points for Cook's acceptance of responsibility. Cook's criminal history category was I. Applying the Sentencing Table, Cook was, therefore, subject to an imprisonment range of 121–151 months. However, the statutory maximum was 10 years. Following the Guidelines § 5G1.1(a), the probation officer concluded that Cook should not be sentenced to more than 120 months but should be sentenced to this maximum.

At the sentencing hearing the defendant asked the court to depart downward, but the court said, "[t]he Court has no alternative if it's faced with a mandatory sentence. That's made very clear both by the Congress and the guidelines." After further comment on how the court was bound but would have departed if it were not bound, the court told counsel as to a downward departure: "And if you think I can, you take this case to the Ninth Circuit and you get it reversed and you bring it back and I will depart."

The court then sentenced Cook to 10 years imprisonment and a term of supervised release of 3 years.

Cook appeals both the denial of the motion to suppress and the sentence.

### ANALYSIS

1. *The motion to suppress.* In June 1989 the Drug Enforcement Administration (DEA) received information that a person calling himself Ed Dole had ordered 50 kilograms of ephedrine from a chemical supply company in the state of Washington. The order was to be shipped to Fresno, California by Federal Express and claimed at the company's Fresno office.

On June 26, 1989 DEA Special Agent Danny Miller was notified by Federal Express that the chemicals had arrived in Fresno. Miller instructed the company to notify the purchaser that he could pick up his order. Later that afternoon Cook arrived at the Federal Express office, identified himself as Ed Dole, paid for the delivery in cash and took possession of two cardboard barrels containing the ephedrine. This controlled delivery to Cook was under the surveillance of Miller and several other federal and state law enforcement officers.

Cook drove away in a Chevrolet pickup, followed by the officers. He stopped at a service station and took the labels off the barrels. He then proceeded to a supermarket in Paso Robles, California and bought some merchandise. He then continued driving into a rural area outside of Paso

Robles. At this point he appeared to realize that he was being followed, and he began to drive at a high rate of speed over narrow, curving country roads in an apparent attempt to elude pursuit. He was stopped and arrested at the end of this chase.

After he was arrested the officers seized the barrels, opened them and took samples. The officers also searched the cab of the pickup and discovered $4,780 in cash, the Federal Express receipt for the ephedrine, and the labels the defendant had torn from the barrels.

■ Cook argues that opening the barrels was a violation of the Fourth Amendment. He relies on a line of cases involving containers within automobiles, *Arkansas v. Sanders*, 442 U.S. 753, 764, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The distinction drawn in these cases between search of an automobile and search of a container within the automobile has been discarded. *California v. Acevedo*, 500 U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). If there were grounds to search the car, there were grounds to search the container. In this case, the delivery was controlled. The officers knew precisely what was in the barrels. The claim to privacy had already been lost. *Illinois v. Andreas*, 463 U.S. 765, 771–73, 103 S.Ct. 3319, 3324–25, 77 L.Ed.2d 1003 (1983); *United States v. Martin*, 721 F.2d 266 (9th Cir.1983). The district court rightly denied the motion to suppress.

■ 2. *The sentence.* Reviewing the sentence we find a deficiency in the procedure. When the court sentences for a felony for which no guideline has been promulgated, the court "is required to determine if there is a sufficiently analogous offense guideline, and, if so, to apply the guideline that is most analogous." U.S.S.G. § 2X5.1, Comment (backg'd.). In this case the probation officer made a determination but there is no record that the court did. The sentence, accordingly, appears invalid.

■ However, there was no need to invoke the principle of analogy. Guidelines, § 2D1.1 has the heading: "Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)." In other words, the Guidelines include possession with intent to commit manufacturing under unlawful manufacture. *See* U.S.S.G. App.A. There is not a mere analogy but an identity of crimes and punishments. As a result of treating possession with intent to manufacture in the same way as actually manufacturing, the Guidelines have created a mandatory maximum which in fact exceeds what the statute provides. *See United States v. Kingston*, 922 F.2d 1234, 1236–38 (6th Cir.1990). In those circumstances Guideline § 5G1.1(a) comes into play and reduces the sentence to the statutory maximum.

■ The general rule is that a district court's discretionary decision not to depart downward from the Guidelines is not subject to review on appeal. *United States v. Morales*, 898 F.2d 99, 102 (9th Cir.1990). But it is crucial that the district court exercise its discretion. If the court believes that it has no discretion, there is an error of law which we are able to review. In this case it is evident from the statements of the court that it believed it had no discretion and so exercised none. The sentence may be reviewed. *United States v. Mena*, 925 F.2d 354, 355 (9th Cir.1991). The Guidelines are not a straightjacket for district judges. They do give discretion to depart.

The Commission begins with the statutory basis for departure as "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The Commission goes on to say that it "intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court

may consider whether a departure is warranted." U.S.S.G. Ch. 1, Pt.A, § 4(b). Race, sex, national origin, creed, religion, socioeconomic status, and the defendant's physical condition are factors that a court cannot take into account. "With those specific exceptions, however, the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." *Id.* The reasons that the Commission has adopted this policy are two and are in tension with each other: "[I]t is difficult to prescribe a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision," and the Commission believes that courts will not have reason to depart "very often." *Id.* As sponsors of the Guidelines, the Commissioners are reluctant to believe that they have not anticipated most patterns of behavior. As students of human nature, the Commissioners recognize that the range of human conduct is very large.

■ The statute speaks in the singular of "mitigating circumstance," 18 U.S.C. § 3553(b). There is no reason to be so literal-minded as to hold that a combination of factors cannot together constitute a "mitigating circumstance." Given the Sentencing Commission's acknowledgment of "the vast range of human conduct" not encompassed by the Guidelines, a unique combination of factors may constitute the "circumstance" that mitigates. This conclusion is, indeed, required by the Guidelines themselves. The Commission says, in its formal treatment of departures, that the departure is to occur when "a court finds an atypical case," one "where conduct significantly differs from the norm." U.S.S.G. Ch. 1, Pt.A, § 4(b). What the Commission has focused on is "the case" conduct. Neither case nor conduct can be reduced to a single factor. Case and conduct are a total pattern of behavior.

In making a decision in any particular case, good judgment will often require the evaluation of a complex of factors. No single factor may be enough to point to the wise course of decision. But a wise person will not look on each particular factor abstractly and alone. Rather, it will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decision.

AFFIRMED as to the conviction; REMANDED for re-sentencing.