**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Rachelle L. MILLER, Defendant–
Appellee.**

**No. 92–30083.**

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 2, 1993 *.

Decided April 15, 1993.

---

* The panel unanimously finds this case suitable
for decision without oral argument. Fed.
R.App.P. 34(a); 9th Cir.R. 34–4.

John C. Carver, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellant.

Murray B. Guterson, Culp, Guterson & Grader, Seattle, WA, for defendant-appellee.

Before: TANG, KOZINSKI and FERNANDEZ, Circuit Judges.

KOZINSKI, Circuit Judge:

A. Rachelle Miller pled guilty to embezzling money from the bank for which she worked. Her Guidelines sentence range was 12 to 18 months, but the district judge departed downward and sentenced her to three years probation plus six months home detention. The government appealed, claiming the district court gave an insufficient explanation of its reasons for departing, and we remanded for resentencing. The district court reimposed the same sentence, this time with a full explanation, and the government appeals again.

■ B. The first reason the district court gave for departing—that Miller has two small children who "would be placed at potential risk," ER G at 14, if Miller is sent to jail—is improper. The Commission considered whether family responsibilities should affect the sentence, and concluded they "are not ordinarily relevant in determining" whether to depart. U.S.S.G. § 5H1.6. And there's nothing extraordinary about this case. Miller "has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences

normally disrupts ... parental relationships." *United States v. Berlier*, 948 F.2d 1093, 1096 (9th Cir.1991).[1]

■ C. Likewise, the court's second reason for departing—that Miller has a clean record and poses no threat to the public—is also improper. The Commission considered the fact that people with no criminal history pose relatively little threat; that's what criminal history category I is all about, and Miller got the benefit of it. *See id.* at 1095.

D. Another reason the court gave for departing was the magnitude of Miller's restitution. Miller and two other people embezzled $45,000, but though the plea agreement required her to pay only $18,000 restitution, she paid $58,000—substantially more, in the court's view, than she was responsible for. ER G at 15.

■ The Sentencing Commission considered the possibility that a defendant's payment of restitution might be a mitigating factor: U.S.S.G. § 3E1.1 app. note 1(b) permits a 2-level decrease for acceptance of responsibility if the defendant pays restitution. A court's discretion in departing because of restitution is therefore constrained in three ways. First, the departure must be consistent with the attitude the Commission took toward restitution, which is that restitution is relevant to the extent it shows acceptance of responsibility. In this case, this means the payment had to have been genuinely voluntary, rather than motivated primarily by a collateral consideration such as a desire to settle the civil lawsuit against her by the bank. Second, the court may depart only if the acceptance of responsibility was substantially greater than that contemplated by the Commission when drafting section 3E1.1. *See* U.S.S.G. § 5K2.0 (p.s.); 18 U.S.C. § 3553(b); *Berlier*, 948 F.2d at 1096; *see*

1. The dissent argues this case doesn't merely implicate "the disruption of the parental relationship," Dissent at 556, but rather involves "the risk to the children from the imprisonment of a parent," *id.* But disruption of the parental relationship when a parent is imprisoned almost always exposes children to the risk of psychological harm; the Sentencing Commission considered this and nonetheless concluded family responsibilities ordinarily ought not justify a departure. Nothing in the record supports a finding that the children here would be exposed to a substantially greater risk of harm than can normally be expected when there is an extended, forced separation from one parent.

*also United States v. Brown*, 985 F.2d 478, 482–83 (9th Cir.1993) (allowing departure for extraordinary acceptance of responsibility). And third, the magnitude of the departure must be commensurate with the level of the defendant's acceptance of responsibility. *See United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir. 1991) (en banc). Because we're not sure the court applied this standard, we instruct it to reconsider its decision to depart because of payment of restitution.

■ **E.** The district court gave one more ground for departing: By the second sentencing hearing, Miller had almost finished serving her six months of home detention. Making her also serve the Guidelines prison sentence would be, the judge said, "a great travesty of justice." ER G at 16.

We agree it may have been proper to depart because of the six months of home detention Miller had already served. The fact that she'd already been punished to some extent is certainly relevant to what further sentence is needed to punish her and deter others. *See* 18 U.S.C. § 3553(a)(2) (sentence should reflect these and other considerations). And because the Commission seems not to have considered the issue of compensating for time erroneously served, the district court was free to depart. *See* 18 U.S.C. § 3553(b).

But its freedom wasn't unlimited. Home detention is a lighter punishment than prison, so it would have been wrong for the district court to reduce Miller's prison term by more than the six months she served under home detention. Even reducing the prison term by exactly six months would leave her with a lighter punishment than Congress authorized, though not unacceptably lighter. When home detention is an

appropriate punishment (which it would have been had Miller's offense level been 12 rather than 13), the Guidelines approve of crediting home detention time for prison time on a one-for-one basis. U.S.S.G. § 5C1.1(e)(3).

We therefore conclude that, if the district court finds the appropriate sentence for Miller would otherwise include some prison time, it may depart downward by up to six months to take into account her home detention. The exact amount of the departure should be dictated by the district court's balancing of the factors given in 18 U.S.C. § 3553(a)(2).[2]

**SENTENCE VACATED and REMANDED FOR RESENTENCING**

TANG, Circuit Judge: Concurring in part and dissenting in part:

I concur in various aspects of the majority's opinion, but must respectfully dissent because the majority does not give due deference to the district court's discretion in sentencing. The unique combination of factors in this case constitutes a sufficient mitigating circumstance justifying a downward departure from the Sentencing Guidelines range. *See United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991).

I.

Rachelle Miller and two other employees embezzled a total of $45,623 from the City Bank of Lynnwood, Washington. The other employees were not prosecuted, and the loss has never been apportioned among the three people, although Miller admitted that she was involved to some extent in all of the transactions. Prior to engaging in plea negotiations with the government, Miller attempted to arrange restitution with the bank; she offered to pay the bank $40,000

---

**2.** *United States v. Wilson*, —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), cited by the government, is inapposite. *Wilson* involved 18 U.S.C. § 3585(b), and turned on the specific language of that statute; it didn't purport to deal with a district court's power to depart from a Guidelines sentence under 18 U.S.C. § 3553.

The government contends that, because Miller opposed its motion for a stay of the sentence pending appeal, "the responsibility for the de-

fendant's having served her six-month period of home detention rests squarely on [her] own shoulders." Appellant's Brief at 29. The government provides no authority to support this argument, and we have found none. Miller had every right to try to get her sentence over with as soon as possible, rather than leave it hanging over her head pending appeal. Her actions don't deprive the district court of the power to depart.

to settle a civil lawsuit if the bank would release a lien it had placed on the family's home so that Miller and her husband could refinance the home to pay the bank. The bank refused to release the lien. Had the bank done so, Miller contends that she would have paid restitution to the bank before criminal action was commenced.

After the plea agreement was signed in November, in which the government agreed to a restitution payment of $18,164, Miller paid the bank that amount on December 2, 1991. Miller and her husband later obtained a loan from her husband's employer, and in May, 1992, Miller made a further $40,000 payment to the bank, for a total restitution of $58,164.

At the first sentencing proceeding on January 31, 1992, the district court stated its intention of departing downward. The judge felt that no purpose would be served by incarcerating Miller, because there was no question that she would not again be involved in criminal activity, she had already suffered greatly from the proceedings, and the result would be a deterrence to others. [ER B at 13–14]. Because the court had not given the government notice of its intent to depart, the court asked the government attorney whether he wanted a hearing regarding this determination; the government voiced no objections regarding the departure and submitted a form of judgment which was signed by the court on February 4, 1992. Miller was sentenced to six months of home detention which she immediately began serving, three years of probation, and 300 hours of community service. The government voiced no objections to the sentence until its notice of appeal filed on February 28, 1992.

On April 27, 1992, the parties stipulated to remand the case to the district court for the limited purpose of explaining further the reasons for departure. At the second sentencing hearing held on July 20, 1992, the district court imposed the same sentence, but articulated more specific reasons for its downward departure: Miller's family circumstances, the extraordinary degree to which restitution had been made, and Miller's completion of the six month home detention. The majority opinion sends the case back to the district court for yet another round of sentencing proceedings.

## II.

In *United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir.1991) (en banc), this court set out a three step analysis to determine whether a sentence was appropriately imposed outside the Sentencing Guideline range. First, a court must sentence a defendant within the Sentencing Guidelines unless "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." If the circumstance is not adequately considered by the Guidelines, the court may depart "so long as the circumstance is consistent with the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and, of course, with the Constitution." *Lira–Barraza*, 941 F.2d at 746. Whether a factor is adequately considered by the Guidelines and is consistent with 18 U.S.C. § 3553 is reviewed *de novo. Id.*

Second, the factual findings supporting the existence of the circumstance are reviewed for clear error, and third, the court must determine whether the extent of the departure was an abuse of discretion. *Id.* at 747; *see also United States v. Floyd,* 945 F.2d 1096, 1098–99 (9th Cir.1991), *amended,* 956 F.2d 203 (9th Cir.1992).

A district court's reasons for departure should be viewed as a "complex of factors":

[A] unique combination of factors may constitute [a mitigating] "circumstance".... the departure is to occur when "a court finds an atypical case," one "where conduct significantly differs from the norm."

. . . . .

In making a decision in any particular case, good judgment will often require the evaluation of a complex of factors. No single factor may be enough to point

to the wise course of decision. But a wise person will not look on each particular factor abstractly and alone. Rather, it will be how the particular pieces fit together, converge, and influence each other that will lead to the correct decision.

*Cook,* 938 F.2d at 153. While I will discuss each factor cited by the district court as a reason for departure, the final outcome should depend on all factors viewed together.

### III.

First, the district court's departure based on Miller's family circumstances was not clearly erroneous. The district court stated:

> I find that the unique facts and family circumstances of this defendant warrants [sic] a departure from the guideline computation.... the defendant at the time of sentencing in January of 1992 had two small children; as I recall, one was four and a half months and one was approximately four and a half years. Although her husband was and continues to provide financial support to the family, the defendant provided substantial emotional and physical support to these two young children, the youngest of which was actually born while the case was pending. The Court finds that if the defendant was incarcerated for any significant time, the two young children would be placed at potential risk.

Guideline § 5H1.6 provides that "[f]amily ties and responsibilities and community ties are not *ordinarily* relevant in determining whether a sentence should be outside the applicable guideline range." (Emphasis added.) However, in "extraordinary circumstances," family ties and responsibilities may justify a departure. *Floyd,* 945 F.2d at 1100 n. 3. In deciding whether there are "extraordinary circumstances" present in this case, the majority fails to defer to the district court's discretion in evaluating the *facts* of this case.

While the majority is correct that in *Berlier,* 948 F.2d at 1095, we reversed a downward departure based in part on the defen-

dant's efforts to keep his family together because the disruption of the parental relationship was not sufficiently unusual to justify a downward departure, *Berlier* did not directly address the issue in this case: *the risk to the children* from the imprisonment of a parent.

Other circuits have upheld departures when children were at risk from the incarceration of a parent. In *United States v. Pena,* 930 F.2d 1486, 1494 (10th Cir.1991), the Tenth Circuit upheld a downward departure in sentencing a woman who was the mother of a two-month old infant and who provided financial support for her 16–year old daughter and her infant, in part because the two infants would be placed at potential risk by incarcerating the defendant. Similarly, in *United States v. Johnson,* 964 F.2d 124, 129 (2nd Cir.1992), the Second Circuit stated, "The rationale for a downward departure here is not that Johnson's family circumstances decrease her culpability, but that we are reluctant to wreak extraordinary destruction on dependents who rely solely on the defendant for their upbringing."

The fact that Miller is married does not automatically render the risk to the children of a type not justifying a departure. For instance, in *United States v. Alba,* 933 F.2d 1117, 1122 (2nd Cir.1991), the Second Circuit upheld the district court's decision not to incarcerate a married man with two children, and who supported his parents. The court held that incarceration of the defendant might "result in the destruction of an otherwise strong family unit" and that the "close-knit family" depended on the defendant for stability. *Id.*

The district court here found the Miller family circumstances "unique." Rachelle Miller "provided substantial emotional and physical support to [her] young children, the youngest of which was actually born while the case was pending," and incarceration would place the children at potential risk. The majority apparently concludes out of hand that because Miller is not the sole caretaker of her children, "extraordinary family circumstances" cannot be established as a matter of law. Surely we do

not wish to convey to district courts that it is not important to keep families intact or that children (especially infants) may not require the added stability of two parents. Clearly, whether "extraordinary family circumstances" exist depend on the court's knowledge of the defendant and her family—a factual matter within the province of the district court. The district court was not clearly erroneous in its determination.

## IV.

The majority concludes that the district court improperly departed based on Miller's clean record and lack of threat to the public. The district court did comment that Miller has no prior criminal history, poses no threat to the public and would justly and sufficiently be punished, deterred, and rehabilitated by the sentence as a reason for departure. However, neither party treated this as a reason for the departure on appeal, and this statement was more likely made to justify the departure under 18 U.S.C. § 3553, which requires, *inter alia,* that a sentence provide just punishment, afford deterrence to criminal conduct, and protect the public from further crimes.[1]

## V.

Miller's extraordinary efforts at restitution also support the district court's decision to depart downward. The payment of restitution is included as a factor to be considered in granting a two-point reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. As the majority acknowledges, however, a downward departure beyond the two-point reduction is permissible if the acceptance of responsibility was greater than that contemplated by the Sentencing Commission in drafting § 3E1.1. *See United States v. Berlier,* 948 F.2d 1093, 1096 (9th Cir.1991) ("Berlier has made no showing that his payment of restitution *is of a degree not adequately considered by the Commission.*" Emphasis added).

Because "super" acceptance of responsibility through extraordinary efforts at restitution was not contemplated by the Guidelines and a departure on this basis is consistent with 18 U.S.C. § 3553, the factual findings supporting the downward departure (i.e. the magnitude of a defendant's acceptance of responsibility) are reviewed for clear error. *See* U.S.S.G. § 3E1.1, comment. (n. 5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

The district court found:

The restitution efforts in this case are extraordinary. The plea agreement originally provided for a specific agreed amount of $18,164 which was paid by the defendant prior to sentencing ... the restitution steps that this defendant has made, are extraordinary and exceptional and justify a departure.

Prior to sentencing, the defendant had attempted to make an additional $21,836 restitution, and since sentencing occurred in this case, has in fact paid an additional $40,000, resulting in a total of $58,164, which was paid in restitution, substantially more than this defendant was responsible for. This restitution in fact restores the bank for losses caused by other persons not before this Court.

The defendant and her family have had to obtain a substantial loan on the family home as a result of and in order to pay this restitution. The family is now in the process of selling that home in order to repay the loan that has been taken into account. I believe that the extraordinary nature of the restitution, the prompt efforts by the defendant to make the restitution, the ultimate payment of over $58,-000 justify a reduction in the points that would be applicable under the guideline range sufficient so that we would reach

---

1. The reference to Miller's clean record might also have reflected the district court's feeling that this embezzlement was aberrant behavior on the part of Miller. *See United States v.*

*Dickey,* 924 F.2d 836 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991).

a level where probation would be appropriate.

The district court found Miller's restitution efforts alone justified a downward departure to reach a level where probation would have been appropriate. This is a finding of fact which is not clearly erroneous.

Rather than treating these factual findings with the appropriate deference, the majority argues that if a defendant is involved in a civil lawsuit (surely a common circumstance in bank embezzlement or fraud cases), payment of restitution is not voluntary and thus not consistent with acceptance of responsibility because it is "motivated by a collateral consideration such as a desire to settle the civil lawsuit." Because I strongly disagree that the existence of a civil agreement between the defendant and bank is dispositive of whether "super" restitution supports a downward departure, I dissent from the remand.

Two other circuits have concluded that restitution beyond that required by a plea agreement is a valid reason for downward departure. In both, the defendants were involved in civil proceedings with the victim bank. In *United States v. Lieberman*, 971 F.2d 989, 996 (3rd Cir.1992), the defendant paid about $34,000 more than to which he pled guilty, pursuant to an agreement with the bank from which he embezzled the money. Similarly, in *United States v. Garlich*, 951 F.2d 161, 163 (8th Cir.1991), the court held that a downward departure would be justified where the "extent and timing of Garlich's restitution [were] sufficiently unusual." In that case, the defendant had entered into a settlement agreement with the banks to liquefy all of his assets (approximately $1.4 million) to ensure full restitution despite a loss to the banks of only $253,000. *Id.* at 162.

Whether the members of this panel would have decided to depart downward on the basis of Miller's restitution given the existence of a civil agreement with the bank is not the issue here. Rather, the issue is whether the district court's factual findings regarding Miller's acceptance of responsibility (i.e. her motivation for paying the bank for its injury) are clearly erroneous. The majority simply substitutes its judgment for that of the district court on an issue of which the district court clearly has superior understanding.

We must keep in mind the admonishment of the Supreme Court that appellate review in Guidelines cases is *limited*:

Although the [Sentencing Reform] Act established a limited appellate review of sentencing decisions, it did not alter a court of appeals' traditional deference to a district court's exercise of its sentencing discretion. The selection of the appropriate sentence from within the guideline range, *as well as the decision to depart from the range in certain circumstances, are decisions that are left solely to the sentencing court.* U.S.S.G. § 5K2.0 p.s. The development of the guideline sentencing regime has not changed our view that, *except to the extent specifically directed by statute, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."*

*Williams v. United States*, —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (quotation omitted) (emphasis added).

## VI.

Finally, I concur with the majority's conclusion that Miller's six months of home detention is a permissible reason for downward departure because a period of home detention is not a circumstance adequately considered by the Guidelines. Miller immediately began serving her sentence, prior to the government's notice of appeal and the subsequent remand for resentencing, and has already been substantially punished for her criminal actions.

I wish to express my opinion, however, that U.S.S.G. § 5C1.1(e)(3) does not restrict the district court's discretion in imposing sentence upon a downward departure. Section 5C1.1 deals with how to treat home detention as part, or the entirety, of a sentence imposed in the first instance; § 5C1.1 does not treat whether *prior* home detention justifies a downward departure.

While this distinction may seem semantic, the difficulty of including § 5C1.1(e)(3) in the departure calculus becomes apparent when all factors justifying downward departure are viewed together. There is no indication that the district court analyzed each factor separately, and departed a specific amount for each factor; e.g., the district court did not depart downward six months for home detention, three months for Miller's restitution efforts, and one month for her family circumstances. Nor is it required to do so. *See Floyd,* 945 F.2d at 1099 (rejecting government argument "that the district court was required to specify the weight that it accorded to each element of the mitigating circumstance and determine whether each element would independently qualify as a mitigating circumstance").

Instead, as explained above, the factors cited by the district court to justify its downward departure must be looked at as a "complex of factors" which may constitute a mitigating circumstance. *See Cook,* 938 F.2d at 153. Dictating that the district court may only depart downward six months for the previous home detention ignores the wisdom of sentencing with the totality of the circumstances in mind. Thus, I dissent from the majority's limitation on the district court's discretion in considering the time Miller served in home detention as part of the "complex of factors" to justify the downward departure.

### VII.

I conclude that the district court had legal authority to depart downward. The district court justifiably departed based on a "complex of factors" which constituted "a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *see also Cook,* 938 F.2d at 153. The factual findings supporting the existence of the mitigating circumstances are not clearly erroneous.

The extent of the departure was not an abuse of discretion. Miller's adjusted offense level was 13, which at Criminal History Category I resulted in a Guideline range of 12–18 months. If the district court had departed just three levels, the Guideline range would have been 6–12 months, and the imposition of a six month home detention would have been authorized. *Cf. Johnson,* 964 F.2d at 125 (13 level downward departure upheld).

The entire picture before the district court compels me to conclude that the district court exercised its discretion in a totally appropriate manner. Rachelle Miller undoubtedly appeared to the district court to be a woman who had for the first time been involved in illegal activity to finance a drug dependency, who had gotten back on the right track, successfully completing drug counseling and treatment; a woman with an infant and a very young child who was dedicated to her family's care and was extremely concerned with the effects on her children if she were incarcerated; a woman who had done everything she could to "make it right" with her former employer and had paid restitution beyond that required by the plea agreement, reimbursing the bank for all injuries it had sustained from her activities and those of two other employees as well.

"The United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *Johnson,* 964 F.2d at 125. Although the district court may not have sufficiently articulated for the majority the intangible qualities inherent in rendering judgment upon another human situation, I cannot substitute my judgment for that of the district court, which weighed (and reweighed) factors not clearly covered by the Guidelines. I would affirm the sentence rendered by the district court without remanding for resentencing. I therefore respectfully dissent.