**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Omar Jahal DAGGAO, a.k.a. Omar Jahal
Ali–Daggao, Defendant–Appellant.**

No. 93–10321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1994.

Decided July 1, 1994.

Barry J. Portman, Federal Public Defender, San Francisco, CA, for the defendant-appellant.

Martha Boersch, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellee.

Before CHOY, POOLE, and REINHARDT, Circuit Judges.

Opinion by Judge CHOY; Dissent by Judge REINHARDT.

CHOY, Circuit Judge:

## I. FACTUAL AND PROCEDURAL BACKGROUND

Omar Jahal Daggao (a.k.a. Omar Jahal Ali–Daggao) was charged with committing three armed bank robberies, and was arrested on August 27, 1992. He was held in custody until September 9, 1992, when he appeared before a United States magistrate for a bail hearing. The magistrate released Daggao on a $100,000 property bond with several conditions. It was ordered that Daggao be confined to his parents' house, and electronically monitored. He was required to be confined at his parents' house at all times, except to attend a local community college, and for other reasons authorized by Pretrial Services. Pursuant to this order, Pretrial Services authorized him to leave his parents' house every Monday through Friday from 8:00 A.M. to 5:00 P.M. Daggao remained in such in-house detention for approximately seven and a half to eight months.[1]

Prior to sentencing, Daggao requested a downward departure from his Guideline sentence under U.S.S.G. § 5K2.0 on the basis of the approximately eight-month period of in-house detention. The district court denied the downward departure, stating that it did not believe that it had authority to depart downward for time spent under in-house detention under § 5K2.0. When the prosecutor requested that the district court specifically hold that even if it did have such authority, it would deny the request for a downward departure, the district court refused. Daggao was sentenced to 87 months imprisonment, followed by five years supervised release. The 87 month sentence was the low end of the applicable guideline range, based on a total offense level of 27, and Daggao's category III criminal history.

Daggao timely appealed the district court's sentence, claiming that the court erred in finding that it lacked authority under U.S.S.G. § 5K2.0 to depart downward for time spent under in-house detention. We affirm.

## II. DISCUSSION

■ We review de novo the district court's decision that it lacked authority to grant a downward departure from the Sentencing Guidelines. *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991) (en banc).

■ Daggao claims that the district court erred in finding that it lacked authority to depart downward from the Sentencing Guidelines for time spent under in-house detention prior to sentencing. U.S.S.G. § 5K2.0 states:

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described."

If the district court identifies an aggravating or mitigating circumstance not adequately taken into account by the Commission, then "the court is legally authorized to depart so long as the circumstance is consistent with

---

1. The Government alleges that Daggao violated his release conditions, while Daggao claims to have abided by these terms until he surrendered himself at the prison to serve his sentence. The record shows a few minor violations of the conditions of his release. However, in the Presentence Report, prepared just prior to sentencing and after the above reported incidents, it was reported that "[t]o date, the defendant has not violated any conditions of his pre-trial services supervision." Because this was the report relied upon by the district court in making its sentence, we accept the conclusion of the probation officer that Daggao did not violate any conditions of his release.

the sentencing factors prescribed by Congress in 18 U.S.C. § 3553(a), with the Guidelines, and, of course, with the Constitution." *Lira–Barraza,* 941 F.2d at 746.

To the extent that the Sentencing Commission has not considered the conditions or time under which a defendant is released or detained before trial or sentencing, it is simply because a sentencing court lacks statutory authority to consider it as a factor at sentencing, as the Supreme Court held in *United States v. Wilson,* — U.S. —, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). In *Wilson,* the Supreme Court held that the district court has no authority to grant a defendant credit for any time served in detention before sentencing, but rather that the Attorney General has the sole authority to grant credit for time already served.

In *United States v. Huss,* 7 F.3d 1444, 1448–49 (9th Cir.1993), we upheld the district court's finding that it lacked authority to depart downward from the Guidelines on the basis of time which the defendant had already spent in state custody. We found that authority to depart was precluded by the Supreme Court's decision in *Wilson.* In doing so, we rejected the defendant's argument that "he was not asking the district court to circumvent *Wilson,* but rather to credit Huss for time that he served that would not be recognized by the BOP." *Huss,* 7 F.3d at 1449. The court stated that credit for such time served could only be pursued in district court once the defendant had exhausted administrative remedies by challenging the decision of the Bureau of Prisons (BOP) not to grant credit. *Id.* Therefore we refused to reverse the district court's determination that it lacked authority to depart downward for time spent in state custody.

Daggao is also trying to receive a downward departure for time for which the BOP will not grant credit.[2] While Daggao's confinement involved time spent in pre-trial detention rather than time spent in state custody, this is not a meaningful distinction for purposes of U.S.S.G. § 5K2.0. Accordingly, if *Wilson* precludes granting a downward departure for time spent in state custody, it also precludes departure for time spent under pre-trial in-house detention.

Daggao claims that *Huss* is not dispositive because the court couched its opinion under the rationale that rather than ask for a downward departure for time spent in state custody, the defendant should have exhausted administrative remedies before appealing. The administrative remedy the court referred to was a challenge to the Attorney General's sentencing policy, followed by a habeas corpus petition on that issue.[3] As Daggao recognizes, our opinion in *Huss* was focused on the power to grant credit, an administrative action which is generally left to the Attorney General. For this reason, we did not discuss whether pre-trial detention was considered by the Guidelines, or constitutes a mitigating circumstance warranting a downward departure.

Daggao claims that this court in *Huss* did not discuss whether pre-trial detention was considered by the Guidelines, or constitutes a mitigating circumstance, because Huss asked for a downward departure for the purpose of obtaining credit he would otherwise not receive. *Huss,* 7 F.3d at 1448–49. Daggao argues that his claim is different in that he has made it clear he is not asking for credit, only that his detention be considered as a mitigating circumstance. This argument misses the point of our holding in *Huss.* We denied the downward departure in terms of authority to grant credit because we determined that it was improper to circumvent the Attorney General's policies regarding when credit should be granted. Such policies should be directly attacked. Even though in this case Daggao is asking for downward

---

**2.** The Attorney General, in Program Statement No. 5880.24, has determined that for the purposes of granting credit towards a sentence served for days spent in "custody" under 18 U.S.C. § 3568 or "official detention" under its replacement 18 U.S.C. § 3585, only time spent in physical incarceration or a jail-type institution or facility would be credited. Pre-trial detention in residence or a residential community center is not given credit.

**3.** As noted *infra,* this court rejected such a challenge under circumstances similar to those of Daggao's pre-trial detention in *Fraley v. United States Bureau of Prisons,* 1 F.3d 924 (9th Cir. 1993).

departure as "mitigation," the result is that he wants credit for time served in the form of a downward departure. In *Huss* we determined that a district court lacks authority to depart downward for time served.

Daggao argues that this construction is undermined by this court's decision in *United States v. Miller*, 991 F.2d 552 (9th Cir. 1993). In that case, this court held that it was proper for the district court to depart downward from the Guidelines because of six-months of home detention which the defendant had already served under an erroneous sentence. The court specifically held that *Wilson* was inapposite to the district court's power to depart downward from the Sentencing Guidelines. *Id.* at 554 n. 2. However, the circumstances of *Miller* were different from those of the case at bar. The posture of the case in *Miller* was that the district court's initial downward departure from the Guidelines was remanded by this court because the district court failed to adequately explain its reasons for departing from the Guidelines. When the district court reimposed the same sentence, one of the reasons it gave was that Miller had already served most of the original six-month home detention sentence, and it would be a "travesty" to make her serve the Guideline sentence at this point. This court agreed in part:

> We agree it may have been proper to depart because of the six months of home detention Miller had already served. The fact that she'd already been punished to some extent is certainly relevant to what further sentence is needed to punish her and deter others. *See* 18 U.S.C. § 3553(a)(2) (sentence should reflect these and other considerations). And because the Commission seems not to have considered the issue of compensating for time erroneously served, the district court was free to depart. *See* 18 U.S.C. § 3553(b).

991 F.2d at 554. We specifically stated that it is "the issue of compensating for time *erroneously* served" which the Commission had not considered. *Id.* In Daggao's case, the time served was not as part of an erroneous sentence, but was merely a bail condition based on Daggao posing a risk of flight.

Instead of distinguishing this case from *Huss*, the appropriate distinction is between *Huss* and *Miller*. *Miller* is distinguishable from both *Huss* and *Wilson* on the ground that it involved someone who had already been sentenced, whereas in *Wilson* and *Huss*, the question was credit for time spent before sentencing. The holding of *Miller* is limited to the unique situation where time was served under an erroneous sentence. The quotation from *United States v. Cook*, 938 F.2d 149 (9th Cir.1991) which Judge Tang cites in his concurrence in *Miller* is instructive on this point: "[A] unique combination of factors may constitute [a mitigating] 'circumstance' ... the departure is to occur when 'a court finds an atypical case,' one 'where conduct significantly differs from the norm.'" 991 F.2d at 555 (Tang, J., concurring in part and dissenting in part) (quoting *Cook*, 938 F.2d at 153). This court, as well as the Sentencing Guidelines, have made it clear that downward departures are to be reserved for "atypical" situations, and will be highly infrequent. *See* U.S.S.G. Part A4(b). While one might characterize as atypical the situation where a defendant is sentenced erroneously, and upon resentencing may not be given any credit for time served under house arrest, Daggao's situation is not atypical.

Daggao's claim is further undermined by this court's rejection of a direct attack on the BOP's credit policy regarding in-house detention. In *Fraley v. United States Bureau of Prisons*, 1 F.3d 924 (9th Cir.1993), we affirmed the dismissal of a habeas corpus petition which challenged the denial by the BOP of credit for time spent under house arrest prior to trial. In doing so, we recognized the different purposes of imprisonment in home confinement as a sentence compared to pre-trial in-house detention as a bond condition. Like Daggao, the defendant in *Fraley* was not permitted to leave her home without permission from the probation office, and was electronically monitored. We held that the defendant was not entitled to credit, as the conditions did not approach those of incarceration. *Id.* at 926. We rejected an equal protection challenge based on people with sentences of less than six-months being allowed to serve their terms in home confine-

ment. The court found that the defendant was not similarly situated, because of a different legal status. In contrast to those sentenced to home confinement, "pre-sentence residents are not being punished; they are conditionally released to [the halfway house] to protect the community and assure their presence at trial and sentencing." *Id.* (quoting *United States v. Woods,* 888 F.2d 653, 656 (10th Cir.1989), *cert. denied,* 494 U.S. 1006, 110 S.Ct. 1301, 108 L.Ed.2d 478 (1990)).

Daggao argues that *Fraley* is distinguishable because Daggao does not claim that he is entitled to credit for time served under in-house detention, rather only that the circumstances of his pre-trial home detention may be considered as a mitigating circumstance upon which to base downward departure. While Daggao is correct that *Fraley* is not dispositive of the issue at bar, *Fraley* effectively undermines any rationale for allowing in-house pre-trial detention as a mitigating circumstance warranting downward departure. The only rationale for granting such a downward departure would be recognition of such confinement as punishment. However, in *Fraley* we held that pretrial in-house confinement does not serve as punishment, instead serving a separate purpose. "In contrast, pre-sentenced residents are not being punished." 1 F.3d at 926 (quoting *Woods,* 888 F.2d at 656).

It would be inconsistent to hold that a defendant should be allowed a downward departure based on time spent under in-house detention in light of the finding that credit for such time served is not warranted, as this court held in *Fraley.* Pre-trial in-house detention serves a separate purpose from punishment, that of safeguarding the community, and assuring that the defendant is present at trial and sentencing.

## III. CONCLUSION

We affirm the district court's determination that it lacked the authority under U.S.S.G. § 5K2.0 to depart downward from the Sentencing Guidelines on the basis of time spent under in-house detention. The Attorney General has sole authority to grant credit for time served in detention before sentencing. That authority cannot be circumvented by allowing for downward departures under U.S.S.G. § 5K2.0, except under exceptional circumstances such as when a defendant is sentenced erroneously, and has served time under that erroneous sentence.

AFFIRMED.

REINHARDT, Circuit Judge, dissenting:

The majority is certainly correct in stating that the courts cannot grant *credit* for time served in pre-trial detention. *See United States v. Wilson,* —— U.S. ——, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992). My colleagues err, however, by treating what Daggao is actually asking for—a *downward departure* under § 5K2.0 of the Sentencing Guidelines—as if it were equivalent to a request for *credit.* It is not. Accordingly, I dissent.

In *Wilson,* the Supreme Court held that a district court lacked authority to grant credit for time served in detention before sentencing. The Court stated that under 18 U.S.C. § 3585(b), credit for such detention could be granted only by the Attorney General.[1] —— U.S. at ——, 112 S.Ct. at 1354, 117 L.Ed.2d 593. The Attorney General has determined that pre-trial home detention—no matter what the terms of the confinement imposed in the individual case—is not a sufficient restriction on liberty to qualify as "official detention" under the statute. *See* Program Statement No. 5880.24. We agreed with this construction of 18 U.S.C. § 3585(b) in *Fraley v. United States Bureau of Prisons,* 1 F.3d 924, 926 (9th Cir.1992), noting that at least three other circuits had reached the same conclusion.[2]

All of this is quite beside the point, however, because the determination that pre-trial

---

1. 18 U.S.C. § 3585(b) provides, in pertinent part, that

   A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in *official detention* prior to the date the sentence commences....
   (Emphasis added).

2. *See United States v. Edwards,* 960 F.2d 278, 283 (2d Cir.1992); *United States v. Wickman,* 955 F.2d 592, 593 (8th Cir.1992) (en banc); *United States v. Insley,* 927 F.2d 185, 186 (4th Cir.1991). *See also United States v. Zackular,* 945 F.2d 423, 425 n. 2 (1st Cir.1991).

home detention does not qualify as "official detention," as that term is used in 18 U.S.C. § 3585(b), simply does not tell us whether the Sentencing Commission intended in the Sentencing Guidelines to prohibit downward departure when inordinately lengthy periods of home detention occur. Although the Bureau of Prisons is required by 18 U.S.C. § 3585(b) to give credit only for time spent in "official detention," the Sentencing Commission is under no similar constraint with regard to downward departures under the Guidelines. Thus, *Wilson* and the cases applying it are not on point.[3]

Although both statutory credit and downward departure have the effect of reducing the time a defendant will serve, the two mechanisms operate quite differently and serve quite different purposes. Credit, which is granted automatically for time spent in pre-sentence incarceration, acts to prevent unfairness to defendants who are unable to make bail and are subject, as a result, to pre-trial detention equivalent to imprisonment. The granting of credit is mandatory and is controlled by the terms of a specific statutory provision. Convicted defendants who have satisfied the terms of the statutory provision are entitled to credit *as a matter of right.*

Downward departures, on the other hand, are not controlled by statute, but are granted, in cases permitted by the Guidelines, largely according to the sentencing judge's *discretion.* The option of downward departures was included in the Guidelines to account for circumstances relevant to the determination of a just sentence but not considered in setting the Guidelines sentencing ranges. The Guidelines expressly authorize downward departure in a variety of circumstances, such as when the defendant is afflicted with an extraordinary physical impairment (§ 5H1.4), is aged or infirm (§ 5H1.1), provided substantial assistance to authorities (§ 5K1.1), was provoked by the victim (§ 5K2.10), or committed a crime under coer-

cion and duress (§ 5K2.12) or to avoid a greater harm (§ 5K2.11). The Guidelines also authorize downward departures to account for other circumstances not considered by the Sentencing Commission. Section 5K2.0 of the Guidelines states that if the sentencing judge identifies a mitigating circumstance "not adequately taken into consideration" by the Commission, he "may impose a sentence outside the range established by the applicable guideline." U.S.S.G. § 5K2.0.

We have never directly considered whether pre-trial home detention can serve as the basis for downward departure under the Guidelines. Nevertheless, our holding in *United States v. Miller,* 991 F.2d 552 (9th Cir.1993), makes it clear that time spent in home detention may be relevant in determining the availability of downward departure in some circumstances. In *Miller,* the district court departed downward to account for the six months that the defendant had already served under an erroneously imposed sentence of home detention. To make the defendant serve the entire Guideline sentence would, according to the district court, have constituted a "travesty". In upholding the downward departure, we suggested that home detention constituted significant punishment:

> We agree it may have been proper to depart because of the six months of home detention Miller had already served. The fact that she'd already been punished to some extent is certainly relevant to what further sentence is needed to punish her and deter others. *See* 18 U.S.C. § 3553(a)(2) (sentence should reflect these and other considerations). And because the Commission seems not to have considered the issue of compensating for time erroneously served, the district court was free to depart. *See* 18 U.S.C. § 3553(b).

991 F.2d at 554.

Thus, it would seem that home detention, even during the period prior to trial, may be

**3.** All of the other cases cited by the majority relate to requests for credit under 18 U.S.C. § 3585(b), and are inapplicable to Daggao's request for a downward departure. As for *United States v. Huss,* 7 F.3d 1444 (9th Cir.1993), a case on which the majority relies heavily, we did not there reach the question of downward departures. *Huss* involved pre-trial state custody, not home detention. Our opinion in *Huss* never

discusses whether pre-trial detention was considered by the Sentencing Commission as a basis for departure, or whether pre-trial detention constitutes a mitigating circumstance warranting downward departure. *Huss* holds only that the defendant should have pursued his request for *credit* by exhausting his administrative remedies with the *Attorney General. Id.* at 1448–49.

worthy of consideration by a sentencing judge. Like compensation for time *erroneously* served in post-conviction home detention, compensation for time *inordinately* spent in pre-trial home detention has not been expressly considered by the Sentencing Commission. Nor indeed has there been any express consideration of the subject of pretrial home detention at all by the Commission. Nevertheless, there is strong evidence in the Guidelines themselves that the Commission views home detention as a substantial form of restraint (as, of course, we did in *Miller*). Section 5C1.1(e)(3) of the Guidelines authorizes the imposition of home detention for any sentence that falls within Zones A, B, or C of the Sentencing Table. As a result, under the Guidelines, certain prison terms of up to 16 months may be served, in their entirety, in home detention.

In short, the Sentencing Commission has concluded that home detention is sufficiently restrictive to serve as a one-to-one replacement for imprisonment in certain cases. Given this, I cannot say that the Commission would categorically prohibit the use of pre-trial home detention as a basis for downward departure regardless of the length of time the defendant has been detained. Indeed, it is more likely that the Commission would *permit* district judges to consider whether to grant a downward departure on a case-by-case basis, at least in cases where the home detention at issue meets the definition set forth in the Commentary to § 5F1.2.[4] The home detention in this case meets that definition. Accordingly, I would reverse the district court's determination that it lacked authority to grant a downward departure and remand for resentencing.

The power to grant a downward departure is one of the most important vestiges of judicial discretion left to district judges by the Sentencing Guidelines. The majority's opinion curtails that discretion unnecessarily, and with unfortunately harsh consequences. I respectfully dissent.

---

4. "Home detention" means a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other items as may be specifically authorized. Electronic monitoring is an appropriate means of surveillance and ordinarily should be used in connection with home detention. However, alternative means of surveillance may be used as long as they are as effective as electronic monitoring.

U.S.S.G. § 5F1.2, Commentary (n. 1).