USCA1 Opinion

 

 UNITES STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1051 UNITED STATES OF AMERICA, Appellant, v. GEORGE S. BENNETT, JR., Defendant, Appellee.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________  ____________________ Selya, Cyr and Boudin, Circuit Judges. ______________  ____________________ William P. Stimson, Assistant United States Attorney, with whom ___________________ Donald K. Stern, United States Attorney, was on brief for appellant. _______________ Morris M. Goldings, with whom John F. Aylmer, Jr. and Mahoney, ___________________ ____________________ ________ Hawkes & Goldings were on brief for appellee. _________________  ____________________ July 31, 1995  ____________________ CYR, Circuit Judge. Following our remand for resen- CYR, Circuit Judge. ______________ tencing in United States v. Bennett, 37 F.3d 687 (1st Cir. 1994) _____________ _______ ("Bennett I"), which vacated a downward adjustment for acceptance _________ of responsibility, the district court determined that the defen- dant's restitutionary effort an element in its initial down- ward adjustment ruling nonetheless warranted a downward __________ departure from its recalculated guideline sentencing range _________ ("GSR"). The government again appealed, and we now remand for resentencing within the recalculated GSR.  I I BACKGROUND BACKGROUND __________ We relate only the facts essential to an understanding of the instant appeal. For further detail, the reader is invited to see Bennett I, 37 F.3d at 689-92.  _________ A. Factual Background and Initial Sentencing A. Factual Background and Initial Sentencing _________________________________________ Appellee Bennett abused positions of trust with Daniel Webster Mortgage Company, Inc. ("Daniel Webster"), by obtaining more than ten fraudulent real estate loans based on Daniel Webster's lines of credit with Plymouth Federal Savings Bank ("Plymouth Federal") and New Bedford Institution for Savings, which Bennett applied toward the development of real properties held in trust for the benefit of himself and his wife. The fraudulent borrowing scheme involved aliases, false loan docu- ments and concealment. Following its discovery by the Federal Deposit Insurance Corporation during the spring of 1990, Daniel 2 Webster and Plymouth Federal sued Bennett. On February 1, 1991, the parties entered into a settlement agreement, requiring Bennett to turn over cash and other property, including certain improved properties which remained in his possession.  In late 1991, Bennett was indicted on nine felony counts for fraudulently obtaining $900,000 from a financial institution, see 18 U.S.C. 20 (1988) (defining "financial ___ institution"), between August 1988 and October 1989. See 18 ___ U.S.C. 1344. Following his trial and conviction on all charg- es, the district court calculated the total loss occasioned by Bennett at $900,000, see U.S.S.G. 2F1.1(b), rejecting the ___ government's contention that the total loss should include, as relevant conduct, amounts fraudulently borrowed but not charged in the indictment. The district court then deducted (1) the $589,000 Bennett had repaid on the indictment loans prior to the discovery of his crimes, and (2) the value to Daniel Webster  "at least $660,000" of the civil suit settlement agreement entered into after Bennett's crimes had been discovered. Having determined that no loss had been occasioned by Bennett's fraud, the district court ruled that Bennett merited a two-level downward adjustment, see U.S.S.G. 3E1.1, for accep- __________ ___ tance of responsibility by agreeing to settle the indictment loans in full. The resulting Total Offense Level ("TOL") of 8,1  ____________________ 1The TOL calculations at the first sentencing were as follows: 2F1.1 (base offense level) 6 2F1.1(b)(1) (zero loss) 0 3 together with a Criminal History Category of I, produced a GSR of from 2 to 8 months' imprisonment, 24 to 36 months' supervised release, and a $5,000 to $50,000 fine. The district court sentenced Bennett to 24 months' probation and six months' home detention, special assessments totaling $450, and no fine.  B. Bennett I B. Bennett I _________ On appeal in Bennett I we held that the district court _________ had erred in excluding from the total loss calculation under U.S.S.G. 2F1.1(b)(1), as relevant conduct, the losses resulting from fraudulent borrowings not charged in the indictment, Bennett _______ I, 37 F.3d at 694, and in crediting Bennett with "at least _ $660,000" for the civil suit settlement entered into after his _____ crimes had been discovered. Id. at 695 ("'[T]he loss is the ___ amount of the loan not repaid at the time the offense is discov- ered, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan.'") (citing U.S.S.G. 2F1.1, n. 7(b)).2 Finally, Bennett _______  ____________________ 2F1.1(b)(2) (more than minimal planning) 2 3B1.3 (abuse of position of trust) 2 3E1.1 (acceptance of responsibility) (2) _______ TOL 8 2Bennett I established the following formula for calculating _________ "actual loss" under U.S.S.G. 2F1.1 on remand: 1(a) the total dollar amount of the fraudulent loans involved in the nine counts of conviction ($900,000); and ___ (b) the total dollar amount of all loans coming within the "relevant conduct" guideline calculation ($526,000); less ____ 4 I held that the two-level downward adjustment for acceptance of _ __________ responsibility was clear error, since Bennett had neither demon- strated genuine contrition nor made voluntary restitution by _________ settling the civil suit, nor pled guilty to the charges in the indictment, but instead denied the essential factual elements of the charges throughout trial and at sentencing by maintaining that he had never intended to defraud the banks. See id. at 696- ___ ___ 98. We therefore vacated the first sentence and remanded for resentencing. Id. at 700. ___ C. Resentencing C. Resentencing ____________ On remand the district court recalculated the total loss at $837,000, after including the losses occasioned by the fraudulent borrowings for which Bennett was not indicted, result- ing in a TOL of 18.3 Following Bennett's request for a downward departure, see 18 U.S.C. 3553(b), the district court identified _________ ___  ____________________ 2(a) the total dollar amount of all loans repaid by the ______ defendant prior to May 3, 1990 ($589,000), the date Bennett's unlawful activities were discovered; and ___ (b) the total recoveries realized and reasonably to be expected from all collateral pledged to secure the fraudulent loans involved in all counts of conviction and encompassed within the relevant conduct calcula- tion. See Bennett I, 37 F.3d at 695. ___ _________ 3The recalculated TOL is comprised as follows:  2F1.1(a) (base offense level) 6 2F1.1(b)(1) (total loss of $837,000) 8 2F1.1(b)(2) (more than minimal planning) 2 3B1.3 (abuse of position of trust) 2 ______ TOL 18 5 two factors ostensibly warranting a departure from the GSR. First, Bennett had already served a portion of the original sentence, including the entire six months' home detention term. Second, the civil suit settlement constituted "an extraordinary act that seldom occurs in the criminal courts. . . ." According- ly, the district court granted a six-month downward departure from the recalculated 27-month GSR minimum, based on the six months' home detention term already served, combined with a further 15-month downward departure for the "extraordinary act" of entering into the civil suit settlement agreement to repay $694,000.4 The district court then imposed the minimum six- month prison term now under challenge on appeal.  II II DISCUSSION DISCUSSION __________ The United States contends that Bennett I foreclosed _________ both a downward adjustment and a downward departure for accep- tance of responsibility based on the civil settlement and Ben- nett's belated expression of contrition at sentencing. See ___ Bennett I, 37 F.3d at 696-98; see also U.S.S.G. 3E1.1 (permit- _________ ___ ____  ____________________ 4As the government has not appealed the six-month downward departure, we do not address it. But cf. United States v. ___ ___ _____________ Zackular, 945 F.2d 423, 425 (1st Cir. 1991) (rejecting home ________ confinement as "official detention" for purposes of 18 U.S.C.  3585 (Credit for Prior Custody): "While a defendant's movement may be severely curtailed by . . . home confinement, . . . confinement to the comfort of one's own home is not the function- al equivalent of incarceration in either a practical or a psycho- logical sense."); see also Reno v. Koray, 115 S. Ct. 2021 (1995) ___ ____ ____ _____ (construing phrase "official detention," see 18 U.S.C. 3585(b), ___ in light of Bail Reform Act of 1984, related sentencing provi- sions and Bureau of Prisons guidelines). 6 ting two-level downward adjustment for clear demonstration of __________ acceptance of responsibility).  A. Downward Departure A. Downward Departure __________________ A sentencing court may depart from the GSR "only in the ______ extraordinary case -- the case that falls outside the heartland for the offense of conviction . . . ." United States v. Jackson, _____________ _______ 30 F.3d 199, 201 (1st Cir. 1994); see also United States v. ___ ____ ______________ Rivera, 994 F.2d 942, 947-49 (1st Cir. 1993). The departure ______ decision is subject to bifurcated review. United States v. Fahm, _____________ ____ 13 F.3d 447, 450 (1st Cir. 1994). First, all "quintessentially legal" rulings underlying the decision to depart (viz., whether the guideline language encourages, permits or forbids departure for the kinds of reasons relied upon by the sentencing court) are _____ __ _______ reviewed de novo. Id. at 450 (quoting Rivera, 994 F.2d at 951). __ ____ ___ ______ Second, the "heartland" determination itself is reviewed with "full awareness of, and respect for, the trier's superior 'feel' for the case." Rivera, 994 F.2d at 952 (citation omitted); see ______ ___ also Fahm, 13 F.3d at 450. ____ ____ 1. Extraordinary Act 1. Extraordinary Act _________________ Following Bennett I, the district court found that the _________ $660,000 settlement agreement constituted "an extraordinary act that seldom occurs in the criminal courts," for which Bennett "should be rewarded . . . ." The district court carefully avoided explicit reliance on "acceptance of responsibility," apparently in deference to Bennett I, 37 F.3d at 698 (stressing _________ that restitution must be "'genuinely voluntary, rather than 7 motivated primarily by a collateral consideration such as a desire to settle the civil lawsuit'") (quoting United States v. _____________ Miller, 991 F.2d 552, 553 (9th Cir. 1993)); cf. United States v. ______ __ _____________ Hendrickson, 22 F.3d 170, 176 (7th Cir.) (rejecting civil forfei- ___________ ture, in light of its involuntary nature, as basis for finding of "extraordinary acceptance of responsibility"), cert. denied, 115 _____ ______ S. Ct. 209 (1994). Bennett I also held, however, that the civil _________ suit settlement was not "genuinely voluntary," 37 F.3d at 698, and that "'restitution is relevant to the extent it shows accep- __ ___ ______ __ _____ ______ tance of responsibility.'" Id. (quoting Miller, 991 F.2d at 553) _____ __ ______________ ___ ______ (emphasis added). Consequently, whether or not the civil suit settlement constituted an "extraordinary act," there has been no showing that it formed a material basis for either a downward adjustment or a downward departure, let alone for establishing restitutionary conduct outside the "heartland." See Rivera, 994 ___ ______ F.2d at 947.  As the only ground for the challenged downward depar- ture had been foreclosed by Bennett I, which plainly held that _________ the civil suit settlement was not genuinely "voluntary" within the meaning of U.S.S.G. 3E1.1, see Bennett I, 37 F.3d at 698, ___ _________ and could not form the basis for a downward adjustment for __________ acceptance of responsibility, it could afford no permissible basis for the 15-month downward departure. See Miller, 991 F.2d _________ ___ ______ at 553 (sentencing court may depart downward on basis of restitu- tionary conduct only if it evinces an acceptance of responsibili- 8 ty substantially greater than that required for a downward adjustment under U.S.S.G. 3E1.1).  __________ 2. Overstated Loss and "Multiple Loss Causation" 2. Overstated Loss and "Multiple Loss Causation" ____________________________________________ On appeal, Bennett broaches for the first time the alternative arguments that the 15-month downward departure should be upheld either because the $837,000 total loss recalculation significantly overstates the seriousness of his conduct, see ___ U.S.S.G. 2F1.1, n. 7(b) (1994), or on the ground of multiple loss causation. See, e.g., United States v. Rostoff, 53 F.3d ___ ____ _____________ _______ 398, 405 (1st Cir. 1995) (acknowledging that a downward departure may be warranted in the "few instances" where ". . . a misrepre- sentation . . . is not the sole cause of the loss. . . .") (citing U.S.S.G. 2F1.1, n.11 (1987)); see also United States v. ___ ____ _____________ Gregorio, 956 F.2d 341, 345 (1st Cir. 1992). ________ Although Bennett contends that the total loss is overstated as a consequence of an economic downturn in the regional economy, insofar as the record on appeal permits assess- ment it undermines Bennett's claim. The valuation of the proper- ty Bennett agreed to surrender under the terms of the civil suit settlement was disputed at the initial sentencing; viz., the government contending for $431,024.16, Bennett $684,000. At that time, Bennett maintained that a slumping economy had reduced the value of the settlement after the banks took title to the im- _____ proved properties and other assets tendered by Bennett. The district court accordingly rejected the lower valuation propound- ed by the government, and found the settlement worth "at least 9 $660,000." Subsequently, at resentencing, it placed the value of Bennett's "extraordinary act" at $694,000.  Thus, not only did Bennett not proffer record evidence of a sudden, unforeseen downturn in the regional economy that significantly lowered the value of the properties financed with his illegal borrowings, but throughout both prior sentencing proceedings he maintained that market factors had not affected these properties. We therefore hold both that the "multiple loss causation" claim has not been preserved, see United States v. ___ ______________ Dietz, 950 F.2d 50, 55 (1st Cir. 1991) ("[I]n connection with _____ sentencing as in other contexts . . . arguments not seasonably addressed to the trial court may not be raised for the first time in an appellate venue."), and that it is unsupported indeed contradicted by the record.  III III CONCLUSION CONCLUSION __________ As all available avenues for a downward departure have been foreclosed, we vacate the second sentence imposed by the district court and remand for resentencing within the guideline sentencing range prescribed by the total offense level recalcu- lated by the district court at the first resentencing. SO ORDERED. SO ORDERED. __ _______  10